Williams, Judge,
delivered the opinion of the court:
The Chippewa Indians of Minnesota bring this suit under the act of May 14, 1926 (44 Stat. 555), as amended by the nets approved April 11, 1928 (45 Stat. 423), and June 18, 1934 (48 Stat. 979). The material provisions of the act of May 14, 1926, as amended, are set out in the Findings of Fact and need not be restated in detail here.
The plaintiffs in the amended petition assert two claims against the United States, (1) for the alleged appropriation of timber by the defendant for its own use, and (2) for the alleged appropriation of lands, both without any consideration to plaintiffs therefor, and in violation of the expressed terms of the trust created by agreements entered into by the defendant with the plaintiffs in conformity with the authority contained in the act of January 14, 1889 (25 Stat. 642).
The act of January 14, 1889, authorized the President to appoint commissioners to negotiate with all the different hands or tribes of Chippewa Indians in the State of Minnesota for the complete cession and relinquishment in writing of all their title and interest in and to all the reservations of said Indians in the State of Minnesota, except so much of the White Earth and Red Lake Reservations as in the judgment of the commission would be required to make and fill the allotments provided for in the Act, and not reserved by the commissioners for said purpose. The cessions were not to become effective until approved by the President, which approval, the Act declared, should “be •deemed full and ample proof of the assent of the Indians and” should “operate as a complete extinguishment of the Indian title without any other or further Act or ceremony whatsoever for the purposes and upon the terms in this act provided.”
The terms of the cession as provided in the Act were:
Section 4 required the Commissioner of the General Land Office to cause all the ceded lands to be surveyed in the manner provided by law for the survey of public lands, and *28 directed the Secretary of the Interior to appoint competent and experienced examiners to personally make a careful, complete, and thorough examination of the said lands by 40 acre lots, for the purpose of ascertaining on which lots there was standing or growing pine timber, and to classify all such lots as “pine lands,” and make due entry thereof in books provided for that purpose showing with particularity the amount and quality of all pine timber standing or growing on any lot so classified, the amount to be estimated in the manner usual in estimating such timber, and submit reports of their work to the Commissioner of the General Land Office. Thereupon the Commissioner was directed to make a list of all such “pine lands” describing each 40 acre lot separately, and opposite each such description to place the actual cash value of the lot (which should include the value of the land as well as all timber thereon) according to his best judgment and information, but in no event to fix the valuation of the lot at less than the value of the pine timber thereon computed at a rate not less than $3.00 per thousand feet board measure. The lists so prepared were subject to the approval or rejection of the Secretary of the Interior, and if approved, fixed the minimum price for which each lot could be sold.
Secs. 4 and 6. All the ceded lands not classified as “pine lands” were directed to be classified as “agricultural lands” and disposed of under the Homestead Laws at $1.25 per acre.
Sec. 5. All lands classified as “pine lands” when the listing thereof had been approved by the Secretary of the Interior as directed in Section 4, were directed to be proclaimed as in market, and each lot offered for sale separately, and after advertisement, as required by the Act, sold at public auction to the highest bidder for cash at not less than its appraised value.
Sec. 7. The net proceeds received from all the ceded lands were directed to be placed “in the Treasury of the United States to the credit of all the Chippewa Indians in the State of Minnesota as a permanent fund; to draw interest at the rate of 5% per annum, payable annually for the period of 50 years, three-fourths of said interest to be paid annually to the Indians in cash and one-fourth to be expended for their *29 education.” At the expiration of the 50 year period the , permanent fund was directed to be “divided and paid to the said Indians and their issue then living, in cash in equal shares.”
Commissioners were duly appointed in accordance with the act of January 14, 1889, and entered upon agreements of cession with all the bands and tribes of Chippewa Indians of Minnesota, in which they ceded all their lands in the State of Minnesota to the United States upon the terms stated in the act, and these agreements were approved by the President March 4, 1890, as required by the act.
It appears that the Chippewa Indians of Minnesota ceded all their lands in the State of Minnesota, and the timber thereon, to the United States upon the clearly defined trust declared in the act of January 14, 1889, which the United States was obligated to execute for the purposes set forth in the act, and to account to the Indians for the proceeds derived from such lands and timber upon their disposal.
The act of January 14,1889, was first amended by the act of June 27, 1902 (32 Stat. 400). This act amended section 5 of the act of 1889, in the following respect: the pine timber was directed to be sold separate from the land; the Secretary was authorized, after advertisement, to receive bids for the timber on not exceeding 10 sections in any one bid; all sales were to be made upon separate sealed bids for the timber on each lot; no sale was to be approved for less than the minimum price of $4.00 per thousand feet board measure for Norway pine and $5.00 per thousand feet board measure for white pine; the Secretary was authorized to accept any, or reject all, bids; all timber sold was to be cut, banked, and scaled in the log according to Scribners’ Eules, and paid for at the sale price per thousand feet, with the proviso, that 200,000 acres of the ceded lands classified as “pine lands,” and 5% of the pine timber standing thereon, should be reserved for forestry purposes, and that in addition thereto all lands and timber on 10 sections, and certain islands and points therein described should be likewise reserved from sale, for forestry purposes. When the merchantable pine timber on any tract classified as “pine lands” (except on the *30 lands reserved for forestry purposes) was removed, the tract was to be opened to homestead entry and disposed of at $1.25'. per acre. When 95% of all the merchantable pine timber on any tract reserved for forestry purposes, except the 10 sections, islands, and points, was cut, such tract was, without further act, resolution, or proclamation, to forthwith become and be a part of a forest reserve, the same as though-set apart by proclamation of the President in accordance with the act of Congress approved March 3,1891, and subsequent laws amending and supplementing the same.
The act of May 23, 1908 (35 Stat. 268), further amended the act of 1889 as amended by the act of 1902. Section 1 of this act created a national forest, describing the same by metes and bounds. The national forest so created included a part of the 200,000 acres of forestry lands selected by the Forester under the act of 1902 and the 10 sections, islands,, and points, specifically referred to in that act, and “also 160 acres at the extremity of Sugar Point, on Leech Lake,, and the peninsula known as Pine Point.” By section 2 provision was made for the permanent withdrawal of all the lands described in the act, and all timber on the 10 sections, islands, and points for the reservation from sale of the 5% of the timber reserved by the act of June 27, 1902, and of 10% of the “merchantable pine timber” standing on the-uncut portions of the reserved lands, outside of the 10 sections, islands, and points; and, for the sale by the Secretary of the Interior, from time to time, of so much of the timber on the 10 sections, islands, and points as the Forester might deem advisable in the conduct of a national forest, provided that a commission of three persons should “at once” be appointed, consisting of one person to be designated by the President, one by the Secretary of the Interior, and one by a general council of the Indians from four reservations therein named. The proviso directed the commission to “proceed forthwith” to appraise the value of the 5% of merchantable pine timber reserved under the act of June 27, 1902, the 10% reserved under “this Act”, and the timber upon the 10 sections, islands, and points, and to add to the value of said timber an amount equal to $1.25 for each and every acre of land directed by “this Act” to be included in *31 the reserve, and to certify their findings to the Secretary of the Interior. The Indians at the council, heretofore referred to, were authorized to select a representative, to serve without compensation, who was authorized, within 60 days after the commission certified its findings to the Secretary,, to appeal therefrom to the President. The action of the President was made final, and the amount approved by him was directed to be certified by the Secretary of the Interior to the Secretary of the Treasury, and placed to the credit of all the Chippewas in the State of Minnesota in their trust fund, to draw interest at the rate of 5% per annum as provided in the act of January 14, 1889.
The commission authorized in section 2 of the act of 1908 to be “at once” appointed was not named until December 18, 1922. However, the Commissioner of Indian Affairs prior to that date, on July 29, 1922, designated a committee consisting of a representative of the Indian Office, a representative of the Forestry Service, and a Chippewa Indian, to make preliminary investigations of claims, both legal and equitable, of the Chippewa Indians, for the land and timber taken by the act of May 23, 1908.
On November 11, 1922, the committee filed its report with the Commissioner of Indian Affairs. Thereafter, on. December 18, 1922, the three persons who composed the committee making preliminary investigation were regularly appointed and commissioned members of the commission to carry out the provisions of the act of May 23, 1908. The commission adopted and used as a basis for its findings, the report of the committee, and on January 16, 1923, certified to the Secretary of the Interior an award as follows:
190,944.93 acres at $1.25_ $238, 681.16
Values of all timber on 10 sections, islands and points— 914,830.09
Value of 5 and 10% reserved timber- 336,684.33
Total award_$1,490,195. 58
The award made by the commission was approved by the President and certified to the Secretary of the Treasury for payment, who on May 31, 1923, placed the amount of the award to the credit of the Chippewa Indians of Minnesota in their interest bearing trust fund.
*32 The commission in its report stated that the values of the land and timber included in the award met the legal requirements of the act of May 23,1908, but excluded equitable consideration of the following items set out in the report of the preliminary committee:
1. Matare pine timber on 18 parcels of land reserved within the national forest totalling 44,333 feet board measure, which could not be sold and for which provision should be made to pay the Indians, of the minimum value of- $183,17
2. 90% of merchantable white and Norway pine timber on certain tracts included in the forest reserve which had erroneously been classified as “agricultural lands,” aggregating 2,114,000 feet board measure, for which provision should be made for the proper advertisement and sale in order that the proceeds could be placed to the credit of the Indians, of the value of- 20, 000.00
8. By reason of the long delay in settlement, the Indians had lost interest at the rate of 5% per an-num for approximately 14 years on the value of 190,944.93 acres included in the reserve, and on the 5 and 10% of the merchantable pine timber standing on that portion of the 190,944.93 acres outside of the 10 sections, islands, and points, and recommended that remedial legislation be obtained from Congress allowing interest on said deferred payments, and which interest the commission found aggregated- 402, 755.84
4. Merchantable white and Norway pine, less than 10” in diameter and jack pine, and hardwoods having a well defined and commercial value at the time of the appraisal, standing on that portion of the 190,944.93 acres outside of the 10 sections, islands and points, the value of which the commission recommended should be determined by careful estimate and appraisal and remedial legislation requested of Congress to pay the Indians therefor, and which value on the basis of superficial estimates and appraisals made by the commission, it fixed at approximately- 1,060, 887.70
By the act of February 28, 1925, 43 Stat. 1052, Congress authorized the appropriation of the sum of $422,939.01 in fulJ payment of the foregoing items 1, 2, and 3, and that *33 amount was subsequently appropriated and credited to the plaintiffs’ interest bearing trust fund in the Treasury oí the United States, together with interest thereon from February 1, 1923, to May 26,1926. No provision, however, was made by Congress for the payment of item 4, $1,060,887.70, the estimated value as of the date of the appraisal of the white and Norway pines under ten inches in diameter and jack pine and hardwoods, and plaintiffs have at no time been compensated in respect to such timber. This item constitutes plaintiffs’ first claim herein. It is conceded by the defendant that the timber in question had a value of the amount claimed at the time the lands and other timber included in the award were appraised by the commission under the act of May 23,1908, and at the time the appraisal became final on the approval of the President, April 9, 1923.
The act of May 14,1926, vests the court with jurisdiction to hear and render judgment “in any and all legal and equitable claims arising under or growing out of the act of January 14, 1889 (25 Stat. L. 642), or arising under or growing out of any subsequent act of Congress in relation to Indian Affairs which said Chippewa Indians of Minnesota may have against the United States.” Section 4 of the act provides that “If it be determined by the court that the United States * * * has unlawfully appropriated or disposed of any money or other property belonging to the Indians, damages therefor shall be confined to the value of the money or other property at the time of such appropriation or disposal, together with interest * * The plaintiffs contend that the lands and timber included in the national forest created by the act of May 23,1908, were appropriated by the United States on April 9, 1923, the date on which the President approved the appraisals and award made by the commission appointed under the terms of that act, which they contend is the date fixed in the act upon which the landá and timber actually became a part of the national forest.
Plaintiffs’ contention that the lands and timber included in the national forest were appropriated by the defendant and actually became a part of the national forest on April 9, 1923, is based solely on the provisions of section 5 of the act of 1908, which reads:
*34 That all moneys received from the sale of timber from any of the lands set aside by this Act for a National Forest, prior to the appraisal herein provided for, including all moneys received for timber under sales made by the Secretary of the Interior as authorized by existing laws and section two of this Act, shall be placed to the credit of the Chippewa Indians in the State of Minnesota, as provided for in an Act of Congress entitled “An Act for the relief and civilization of the Chippewa Indians in the State of Minnesota,” approved January fourteenth, eighteen hundred and eighty-nine; and the Acts supplementary thereto, and shall draw interest at the rate of five per centum per annum, pursuant to the terms of said Acts; and after said appraisal the National Forest hereby created, as above described, shall be subject to all general laws and regulations from time to time governing national forests, so far as said laws and regulations may be applicable thereto.
We do not think the language of section 5 is susceptible to the construction plaintiffs place upon it. In the first place, the section uses the words, “the lands set aside by this Act as a national forest,” and also, “the national forest hereby created.” These words, as well as the words employed in section 1 of the act, “That there is hereby created in the State of Minnesota a national forest consisting of lands and territory described as follows: * * are of the present tense and in the absence of other language in the act showing a contrary intent impel the conclusion that it was the intention of Congress to appropriate the lands included in the national forest and the timber growing thereon as of the date of the act, May 23, 1908, and not at some subsequent date. That this was the intention of Congress was further and, we think, conclusively shown by the fact that Congress provided for the payment of back interest for a period of 14 years on the 1908 value of the lands and the reserved merchantable pine. This action of Congress can not be explained or justified on any theory other than that Congress construed the act of May 23, 1908, as having effected an appropriation or taking of plaintiffs’ property as of the date 'of its approval. When section 5 is read in connection with section 2 of the 1908 act which authorizes the Secretary of the Interior to proceed with the sale of certain of the merchant *35 able pine timber on the lands included in the national forest, the provision that the moneys received for timber under sales made prior to the appraisal provided for in the act, shall be placed to the credit of the Chippewa Indians of Minnesota as provided for in the act of January 14, 1889, is in no way inconsistent with the view that the lands included in the national forest were appropriated by the United States and became Federal property in 1908. The Indians were entitled to payment for the value of the merchantable pine timber taken and it was immaterial whether made through sales or through an award after appraisal. The last clause has to do solely with the administration of the national forest, after the appraisal of the lands and timber provided for in the act has been made. Here again words of the present tense are used — “the national forest hereby created as above described.” By no process of reasoning can the provision that the national forest created by the act of 1908 shall be subject to all general laws and regulations after the appraisal therein authorized had been made, be construed as establishing the date of the approval of the appraisal as the date of the taking or appropriation of plaintiffs’ lands and timber. The repeated expressions of Congress, made in the present tense, must be construed as showing the intention of Congress to create a national forest as of the date of the act of May 23,1908, and this was necessarily the date of the appropriation of plaintiffs’ land and the timber thereon.
The property consisting of the lands and timber thereon included in the national forest was appropriated by the United States on May 23,1908. Under the jurisdictional act the measure of plaintiffs’ recovery is limited to the value of such lands and timber on the date of their appropriation. It is established in the record that the type of timber embraced in plaintiffs’ first claim, white and Norway pine less than 10 inches in diameter, jack pine, poplar, white birch, yellow birch, oak, basswood, ash, elm, spruce, tamarack, balsam, and cedar, had no merchantable value on May 23,1908. The appraisal commission in a report to the Commissioner of Indian Affairs said in respect to this timber:
*36 In bis opinion of January 19, 1922, the Solicitor for the Department of Agriculture held that the use of the term “merchantable pine timber,” in relation to lands other than the ten sections, islands and points, showed a clear intention on the part of Congress to allow the Indians compensation only for timber reserved from cutting which was merchantable at the time of the passage of the said Act of 1908. Since the preponderance of evidence was to the effect that the white and Norway pine under 10 inches in diameter, and jack pine and hardwoods of all diameters was not commonly regarded as merchantable in 1908, it was the belief of the said Solicitor that no allowance should be made for such classes of timber in determining the amounts to be paid to the Indians. The Solicitor of the Department of the Interior concurred in this view. Because of these opinions the Commission in determining the amounts due the Indians excluded from their appraisal all such timber standing upon lands cut over under the Acts of 1902 and 1908.
The Commission finds, however, that these classes of timber now possess well-defined and considerable commercial value, which as a matter of equity should be recognized by the Government; and, therefore, recommends that Congress be asked to enact legislation authorizing the appraisal of said timber and proper payment to the Indians therefor.
The volume and the exact value of such timber have not been determined by careful estimate and appraisal; but superficial estimates and appraisals conducted jointly by representatives of the Indian Service and of the Forest Service during the fall of 1922, resulted in finding the value thereof to be approximately $1,080,887.70.
The plaintiffs and the defendant are now in substantial agreement that the estimated value placed on this timber by the commission was its approximate value on April 9, 1923, the date on which the President approved the appraisal and award of the commission. Since the timber involved in this claim had no merchantable value on the date plaintiffs’ lands and property were appropriated, May 23, 1908, it is immaterial what value it may have had fourteen years later. The defendant was required to account to plaintiffs for the value of the timber at the time it was appropriated by the United States, and having had no ascertainable market value at that time, it is clear that plaintiffs are not entitled to *37 recover in respect to such timber. Plaintiffs’ first claim in suit is therefore disallowed.
The second claim in suit is for the value of 10,129.20 acres of land at $1.25 per acre, or $12,661.50, together with interest thereon at the rate of 5 percent per annum from November 23, 1885, to the date of judgment.
The basis of the second claim is, that as a result of erroneous surveys approved June 21, 1872, December 14, 1875, and November 23, 1885, marking the exterior boundaries of the Bed Lake Reservation, as fixed in the treaties of February 22, 1855, and October 2, 1863, there were mistakenly included within the boundaries of the reservation 31,933.96 acres of defendant’s lands and mistakenly excluded therefrom 48,299.76 acres of land set aside by the treaty of October 2,1863, for the use of the Indians, resulting in a loss to the Indians of 16,365.80 acres, which were appropriated by the Government to its own use and disposed of under the general homestead laws without any consideration therefor to plaintiffs. Plaintiffs’ concede that in a settlement made with them under the act of February 9, 1925 (43 Stat. 816), for lands taken under the act of May 17,1900 (31 Stat. 179), commonly known as the Free Homestead Act, they were paid at the rate of $1.25 an acre for 6,236.60 acres in excess of the actual acreage taken under that Act. The claim presented, therefore, is for the difference between the 16,365.80 acres included by the treaties stated, within the boundaries of the Red Lake Reservation, which were mistakenly appropriated by the defendant as the result of erroneous surveys, and the 6,236.60 excess acreage for which plaintiffs were, paid under the Free Homestead Act.
Plaintiffs do not allege in their amended petition of August 22, 1935, when this claim is for the first time asserted, that the claim arises or grows out of the act of January 14, 1889, or any subsequent act of Congress. On the contrary, as the following excerpt from the petition shows, the plaintiffs allege that the claim arose long prior to the act of January 14,1889:
Prior to the adoption of the Act of January 14, 1889 (25 Stat. 642), the defendant, the United States, had assumed to survey and establish the boundaries of the *38 reservations in Minnesota occupied by the Chippewa Indians of Minnesota. In the making of such surveys, and establishing of such boundaries errors occurred, as a result of which there were wrongfully excluded from the Indian reservations as the same had been established by prior treaties with the Indians, a total of 16,365.80 acres of lands, which lands the defendant, United States, in consequence of errors aforesaid, and prior to January 14, 1889, had disposed of under its public land laws, without any credit to the Indians therefor.
The court’s jurisdiction in this case is limited to “legal and equitable claims arising under or growing out of the act of January 14, 1889 * * *, or arising under or growing out of any subsequent Act of Congress” which the “Chippewa Indians of Minnesota may have against the United States.”' It is too clear for argument or for extended discussion that the claim now under consideration is outside the jurisdiction of the court, however meritorious it otherwise may be. The claim, therefore, will have to be disallowed.
OFFSETS
The jurisdictional act provides:
Sec. 3. In said suit or suits the court shall also hear,, examine, consider, and adjudicate any claims which the United States may have against the said Chippewa Indians, and any payment or payments which may have been made by the United States upon any claim against the United States by said Indians shall not operate as an estoppel, but may be pleaded as an offset in such suit or suits as may gratuities, if any, paid to. or expended for said Indians subsequent to January 14, 1889.
The defendant contends that the disbursements set out in findings numbers 16 to 21, inclusive, constitute offsets, within the meaning of the jurisdictional act. Plaintiffs contend that none of the expenditures referred to in these findings form the basis for any offset herein. . They contend that the claimed offsets include expenditures in maintaining the defendant’s long established Indian service in policing the Indian country, and in educating and training, the In *39 dians in agricultural and other civilized pursuits; that such expenditures were made in accord with a long established government policy and for the express purpose of ultimately changing the hereditary customs and habits of the tribes and that the expenditures were made only indirectly for the benefit, or jointly for their benefit and for the purposes of the Government, and do not constitute gratuities within the meaning of the jurisdictional act.
Both the plaintiffs and the defendant have earnestly urged their contentions in respect to the nature of thé disbursements set out in the findings referred to, but inasmuch as plaintiffs are not entitled to recover on their claims against the United States there is nothing to offset in this suit, and a discussion and a determination by the court of the question as to whether these expenditures either in part or in whole would constitute offsets within the meaning of the jurisdictional act in case plaintiffs had been awarded a judgment would be of academic interest only, and would in no way affect the decision. Decision therefore in respect to the offsets claimed by the defendant will be deferred to such time as plaintiffs may present recoverable claims against the United States, if that occasion should arise.
Plaintiffs are not entitled to recover, and the petition, therefore, is dismissed. It is so ordered.
Whalet, Judge; LittletoN, Judge; GeeeN, Judge; and Booth, Chief Justice, concur.
MEMORANDUM
On May 31st, 1938, the plaintiff’s motion for new trial was overruled, and the defendant’s motion for new trial was allowed in part and overruled in part.
It was further ordered that an amendment be made to the findings of fact; and the findings as amended and the judgment and opinion of the court as previously announced were confirmed, as above.
(Note. — Affirmed by tbé Supreme Court, January 3rd, 1939. See page 755, post.)