*668 Indian claims; judgments; res judicata. - On December 16, 1981 the court entered three substantially identical orders respecting each of the above-identified Exceptions. The orders have been consolidated for reporting purposes as follows:
This case comes before the court on defendant’s motions to dismiss plaintiffs’ Exceptions 3, 4, 5, 6, 7, 26, 29 and 36/30/41 on the ground of res judicata. It is one of several related cases brought under the Indian Claims Commission Act of 1946, 60 Stat. 1049: Docket Nos. 19, 188, 189-A, 189-B, 189-C, and 19 and 189-A consolidated. Defendant asserts that these issues are foreclosed because they were determined by this court in previous litigation between the Minnesota Chippewas and the United States. Chippewa Indians of Minnesota v. United States, 80 Ct.Cl. 410 (1935), aff’d. 301 U.S. 358 (1937) (hereinafter cited as No. H-76); Chippewa Indians of Minnesota v. United States, 87 Ct.Cl. 1 (1938), aff’d. 305 U.S. 479 (1939) (hereinafter No. H-192); Chippewa Indians of Minnesota v. United States, 88 Ct.Cl. 1 (1938), aff’d. 307 U.S. 1 (1939) (hereinafter No. H-155); Chippewa Indians of Minnesota v. United States, 90 Ct.Cl. 140 (1940) (hereinafter No. H-163); Chippewa Indians of Minnesota v. United States, 91 Ct. Cl. 97 (1940) (hereinafter No. M-135) (hereinafter referred to collectively as the Nelson Act cases). Answering, plaintiffs oppose the motions.
We hold that this case is controlled by our opinion in Red Lake Band v. United States, concerning Claim No. 2 of docket No. 189-B, decided this date. There we hold that the parties in the Indian Claims Commission Act and Nelson Act cases were identical, but that Creek Nation v. United States, 168 Ct.Cl. 483, 490 (1964), bars the application of res judicata. We therefore find that Exceptions Nos. 3, 4, 5, 6, 7, 26, 29, and 36/30/41 are/is not barred.
Exceptions Nos. 3. 4. 5. 6. 7, 26. 29 and 36
Plaintiffs’ Exceptions Nos. 3, 4, 5, 6, and 7 generally allege mismanagement of Nelson Act funds by defendant and demand more complete accounting. Exception No. 3 questions whether funds were transferred to interest-bearing accounts within the required 30 days; No. 4 charges *669 miscalculation of interest; No. 5 alleges loss due to the use of interest-bearing funds when non-interest-bearing funds were available; No. 6 claims that funds were withdrawn from interest-bearing funds an unreasonably long time before actual disbursement, occasioning loss of interest; and No. 7 asserts failure to classify the source of receipts with the result that plaintiffs cannot determine the adequacy of the receipts.
Plaintiffs’ Exception No. 26 complains of defendant’s failure to provide the dates on which five separate items were credited to the Nelson Act Fund. Plaintiffs assert a need for these dates in order to determine whether defendant spent interest-bearing funds when non-interest-bearing funds were available.
Plaintiffs’ Exception No. 29 seeks clarification of the defendant’s accounting for the purchase of Indian allotments. When a National Forest was created on reservation land, Congress authorized the Government to pay the Indians whose allotments were taken from the Nelson Act fund. The GAO accounting report fails to indicate clearly which expenditures correspond to those purchases, thus making it impossible for plaintiffs to assess their adequacy.
Plaintiffs’ Exception No. 36 alleges defendant’s failure to credit within 30 days the Nelson Act fund principal with $72,060.07 received from the sale of timber, thus depriving plaintiffs of significant amounts of interest on the money. Plaintiffs seek the date that the money was received in the field and the date on which it began to receive interest.
Exception No. 30
Plaintiffs’ Exception No. 30 demands a fuller accounting than that presented in the GAO report. Plaintiffs charge that the report is inadequate for plaintiffs to press their substantive claims.
Exception No. 41
Plaintiffs’ Exception No. 41 alleges that the proceeds from the sale of Chippewa land ceded to the Government were misdivided between the two organizational entities of *670 Chippewa Indians of Minnesota, the Chippewa Tribe and the Red Lake Band. Under the agreement Congress reached with the Chippewas in 1889 (the Nelson Act), the Red Lake Band ceded far more land than the Chippewa Tribe, yet the fund created by the sale of the land was divided among the Chippewas as a whole, so that the Red Lake Band, whose population was much smaller than the Tribe’s, received far less money. This unfair situation was set in concrete when, in response to a Supreme Court ruling that the Red Lake Band owned its land separately, the Government divided the Nelson Act fund into two separate accounts (one for the Band and one for the Tribe) according to population. In this exception, plaintiffs seek payment of the proceeds of the fund proportionate to the land which they contributed.
Defendant’s motions to dismiss assert that such a claim is the quintessential subject of the 1926 Special Jurisdictional Act, 44 Stat. 555, that it should have been raised therefore with the other Nelson Act cases, and that it is now barred by res judicata. The Government correctly points out that the relief demanded by the identified exceptions could have been had as violations of the Nelson Act; it also correctly asserts that the exceptions are very close to the claims adjudicated in No. H-155, 88 Ct.Cl. at 42, which dealt with the GAO report at issue here.
Exception No. 30
Plaintiffs’ answer, that Exception No. 30 states no claim which can be excepted to, is superficial. Behind the claim for full information is the charge that full information will reveal mismanagement, and mismanagement is a claim subject to res judicata.
Nevertheless, plaintiffs have a defense to the application of res judicata: their claims are brought under the Indian Claims Commission Act, section 2, clauses 3 and 5, which *671 created new causes of action based on revision of agreements and fair and honorable dealings. The Government asserts that the question of the res judicata effect of clauses 3 and 5 is open, but Creek held that, virtually regardless of the similarity of substantive claims with earlier ones, the 1946 Act creates new causes of action which will not be barred by res judicata. Creek Nation v. United States, supra, 168 Ct.Cl. at 490; Minnesota Chippewa Tribe v. United States. 227 Ct.Cl. 538, 543 (1981).
Exception No. 41
The Government makes two counterarguments to Creek. First, it argues that the exception is the appropriate subject matter only of clause 3 and that the exception only invokes clause 5. This is wrong on both counts: while the relief demanded would in effect revise the agreement, the grounds for revision are as much fraud and duress (clause 3) as fair and honorable dealings; also, while the exception’s closing lines paraphrase clause 5 only, the exception is not a jurisdictional statement and paragraph 1 of the complaint in No. 189-A expressly alleges jurisdiction under clauses 3 and 5.
The Government’s second argument is that the substance of plaintiffs’ exception is equitable and so could have been litigated under the Nelson Act, and is therefore barred by res judicata. We reemphasize the words of Creek:
* * * if it appears that the claim presented is one which could not have been reached by the court in the prior case, res judicata does not apply. This is so even though recovery could have been had for the Indians on some theory cognizable by the court at that time. Commissioner v. Sunnen * * *. [168 Ct. Cl. at 490.]
According to Creek, therefore, clauses 3 and 5 do not present new causes of action in the sense of new subject matter; they provide for claims (causes) pursuant to new standards[1] —revising agreements, not just interpreting *672 them; fair and honorable dealings, not just the plenary power of Congress[2] —for judging the legal consequences of the facts.[3] The Creek opinion then draws the natural conclusion:
As a practical matter, this means that few, if any, claims asserted under new causes of action created by the Indian Claims Commission Act can be barred by res judicata. [Id.]
Chief Judge Cowen found further support in the legislative history. The cases cited by defendant on the general definition of overreaching, then, simply do not apply to the unique provision of this statute.
Exceptions Nos. 3. 4. 5. 6. 7. 26. 29 and 36. and 30
The Government seems to acknowledge this state of the law, as its only real counterargument to Creek is that plaintiffs’ exceptions are not brought under clause 3 or 5 of the Indian Claims Commission Act. But this is simply not correct: paragraph 3 of Docket No. 19 invokes the 1946 Act generally, and, construing the pleadings so as to do substantial justice (Rule 32(b)), we conclude that it alleges a clause 3 or 5 cause of action. Paragraph 1 of the complaint in No. 189-A expressly alleges jurisdiction under clauses 3 and 5. Defendant does not seriously challenge this jurisdictional allegation in its motions; therefore there is no bar.
This leaves only a claim of collateral estoppel possible, if the issues in the exceptions were actually adjudicated earlier. The Government does not claim that they were; it asserts that they should have been. However close the issues raised by the exceptions were to those in No. H-155, they were not identical, and thus collateral estoppel does not bar plaintiffs’ claim either.
*673 There is language in No. H-155, 88 Ct.Cl. at 42, which would seem to suggest that the court had examined the GAO report and found it complete. This, it would appear, would render collateral estoppel appropriate up to June 30, 1927, the terminal date of the report. However, a close reading of the case reveals that its approval of the report was very general (it was not presented with these specific objections) and was based not on its accuracy so much as the plenary power of Congress to dispose of the funds. The court expressly held that there was no trust relationship and that therefore Congress could reimburse the Treasury from Indian funds for any number of reasons within a wide ambit of discretion. The 1946 Act, however, mandates a range of discretion even narrower than for a trust — fair and honorable dealings: moral claims — and that standard was clearly not applied in No. H-155.
it is therefore ordered that defendant’s motions to dismiss Exceptions Nos. 3, 4, 5, 6, 7, 26, 29 and 36/30/41 are denied, and the case is returned to the trial division for further proceedings consistent with this order.

 Cf. Zuni Tribe of New Mexico v. United States, ante at 618(distinction between "just” compensation and "adequate” compensation).

 The court scrutinized the facts in No. H-155 according to the plenary power standard. 88 Ct.Cl. at 42, aff'd 307 U.S. at 4-5.

 This is of course where collateral estoppel applies with full force; to the extent that the events surrounding the agreement have been determined, they may not be reexamined. Creeks supra, 168 Ct.Cl. at 495.