The **CADDO TRIBE OF OKLAHOMA**
et al.

v.

The **UNITED STATES.**
No. 1-57.

United States Court of Claims.
Oct. 9, 1957.

O. R. McGuire, Washington, D. C., for appellant. Jay H. Hoag, Duluth, Minn., was on the briefs.

Clifford R. Stearns, Washington, D. C., with whom was Asst. Atty. Gen. Perry W. Morton, for appellee.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

LITTLETON, Judge.

Appellant Indian tribe asks this court to review and reverse a determination of the Indian Claims Commission partially adverse to appellant's assertion of ownership, use or occupancy of lands in northwestern Louisiana and southwestern Arkansas which appellant tribe purported to cede to the United States by treaty in 1835. Treaty of July 1, 1835, 7 Stat. 470. The case is presently before us on appellee's motion to dismiss the appeal for want of jurisdiction in that the determination appealed from is not a final determination within the meaning of section 20(b) of the Indian Claims Commission Act, 60 Stat. 1049, 1054, 25 U.S.C.A. § 70s(b), which provides that either party may appeal to the Court of Claims only from a "final determination" of the Commission.

Appellant tribe founded its claim on section 2 of the Indian Claims Commission Act, 25 U.S.C.A. § 70a, authorizing determination of "(3) claims which would result if the treaties, contracts, and agreements between the claimant and the United States were revised on the ground of * * * unconscionable consideration * * * or any other ground cognizable by a court of equity." Appellant claimed to have ceded to the United States approximately 1,000,000 acres of land by the 1835 treaty, but to have received therefor a consideration so grossly less than the value of the lands conveyed that it was unconscionable. Cf. Osage Nation of Indians v. United States, 97 F.Supp. 381, 119 Ct.Cl. 592, certiorari denied 342 U.S. 896, 72 S.Ct. 230, 96 L.Ed. 672.

On December 15, 1954, the Indian Claims Commission issued an order in this case providing in part as follows:

"That the initial hearing in the above-entitled case shall be confined to the question of title or ownership of the territory claimed by plaintiff, or owned and occupied by it, and the area thereof, and all other issues of law or fact in said cause shall be postponed until the determination of said question."

A hearing was held and on March 8, 1956, the Commission entered what it designated an "Interlocutory Order"

which was stated therein to be "on the issues of whether or not the plaintiffs are entitled to prosecute the claims asserted and whether or not the plaintiffs or their predecessors in interest had original title or recognized Indian title to the land, or any part of same, for which they claim to have received from the defendant for the cession of same unconscionable or inadequate consideration."

On that same date the Commission entered findings of fact and an opinion (Docket No. 226), 4 Ind.Cl.Com. 201, 214, determining that appellant tribe had established its right to assert the claim and that it had original Indian title at the time of the cession in 1835 to the land purported to be ceded, but only as to a part of such land.

The order of March 8, 1956 described the area which the Commission found to have been owned by aboriginal use and occupancy, i. e., Indian title, by appellant. On January 2, 1957, the Commission issued an order amending Finding No. 12 of its findings of fact of March 8, 1956, clarifying the description of the area found to have been owned by the appellant, and on the same date the Commission issued an order amending the interlocutory order of March 8, 1956.

The amended interlocutory order of January 2, 1957, which is the subject matter of the present appeal, provided in pertinent part as follows:

"The parties filed proposed findings of fact and briefs and said issues were submitted to the Commission for determination; and the Commission, now being fully advised, *finds* that claimants have satisfactorily established their right to assert the claims herein and that their predecessors in interest held original Indian title at the time of the cession of the land involved to the defendant through exclusive use and occupancy on said date, and long prior thereto, to the following described tract of land, to wit:

\*    \*    \*    \*    \*

"This Commission further *finds* that the predecessors in interest of plaintiffs ceded said land to the defendant on July 1, 1835; and that plaintiffs are entitled to an award for the value of said land as of July 1, 1835, less such part thereof as was granted to parties other than the defendant by the treaty of July 1, 1835 with the predecessors in interest of plaintiffs, and less the amount of any credits or offsets to which the defendant may be entitled.

"In keeping with the opinion herein rendered, the findings of fact previously made, and the amendment to Finding No. 12 this day made, all of which are made a part of this order, It Is Ordered and Directed by this Commission that this case proceed for the determination of the acreage of the above-described tract of land and the value thereof on July 1, 1835, less such part thereof as was granted to parties other than the United States by treaty of July 1, 1835 with the predecessors in interest of plaintiffs, or any land which may have been acquired subsequently by said predecessors in interest, if any; and the amount of consideration heretofore received by the plaintiffs or their predecessors in interest for said land, and the amount of any offsets under the provisions of the Indian Claims Commission Act to which the defendant may be entitled, and \*    \*    \*." [Italics supplied.]

The appellant Tribe has appealed from the above quoted order insofar as that order finds that appellant owned *only* the land described in the order, on the ground that the record submitted to the Commission fully established the fact that plaintiff exclusively used, occupied and controlled the much larger area claimed in its petition. Appellant urges that the order is *a final determination* within the meaning of the Indian Claims Commission Act because it apparently finally forecloses appellant's rights asserted in its claim as to the land which the Commission found appellant did not own. The Government appellee

took no appeal from the order of the Commission but has moved to dismiss the appeal on the ground that the order appealed from is not a "final determination" within the meaning of the statute from which an appeal lies. Accordingly, there is before us at this time only the question whether in a claim for unconscionable consideration, a determination by the Indian Claims Commission is final whereby it is concluded by the Commission that the tribal plaintiff had no title, hence no basis for asserting a claim of unconscionable consideration, as to a substantial part of the land included in its claim.

Section 20 of the Indian Claims Commission Act provides that the Court of Claims shall have exclusive jurisdiction to affirm, modify, or set aside "final" determinations of the Indian Claims Commission. Section 19 of the Act, 25 U.S.C.A. § 70r contains a definition of a "final determination" of the Commission as follows:

> "The final determination of the Commission shall be in writing, shall be filed with its clerk, and shall include (1) its findings of fact upon which its conclusions are based; (2) a statement (a) whether there are any just grounds for relief of the claimant and, if so, the amount thereof; (b) whether there are any allowable offsets, counterclaims, or other deductions, and, if so, the amount thereof; and (3) a statement of its reasons for its findings and conclusions."

It will be seen from the above that Congress has defined a "final determination" to be a determination, supported by findings of fact and conclusions of law, which either results in a money judgment for plaintiff or in a dismissal of the petition. It is, of course, obvious that the order appealed from herein falls far short of that statutory definition of a final determination. The question then is, does the order appealed from possess sufficient finality to support an appeal within the jurisdictional limits laid down by Congress in section 20 of the Act?

The two-step determination of claims typified by the order appealed from is not new. This court at one time adopted a rule requiring the initial determination in Indian cases originating in this court to be addressed to the question of liability reserving the question of amount of recovery, if any, until the scope of the right is first established.[1] A similar problem is met with in patent infringement cases where a substantial question may require litigation as to the validity and infringement of the patent prior to any determination as to the amount of recovery. We extended our rule covering separate determinations of liability [presently Rule 38(c), formerly Rule 39 (b)] to apply to *any* case in this court and to allow for such procedure whether upon stipulation of the parties or upon order of the court.

It was apparently the above old Rule 39(a) of this court which prompted the Indian Claims Commission to issue its Rule 22(f) quoted in the margin below.[2] Evidently the fact that the Supreme Court has reviewed determinations of the Court of Claims which decided only questions of liability with judgment that claimant was entitled to recover, leaving for further determination matters of the amount of the money judgment, has per-

---

1. Rule 39(a) of the Rules of the United States Court of Claims, 28 U.S.C., June 1, 1949 ed., provided in part as follows: "In every Indian case, unless otherwise ordered by the court or stipulated by the parties, the hearing in the first instance shall be limited to the issues of fact and law relating to the right of the plaintiff to recover, and the court shall enter its judgment adjudicating that right. * * *"

2. Rule 22(f) of the Indian Claims Commission General Rules of Procedure, which provides: "Sec. 22. *Hearings.* * * * "(f) *On merits.* (1) In every case, unless otherwise ordered, the hearing before the Commission, a Commissioner, or an examiner in the first instance shall be limited to the issue of fact and law relating to the right of the plaintiff to recover."

suaded appellant that similar orders of the Indian Claims Commission are within the appellate jurisdiction of the Court of Claims. See Central Eureka Mining Company v. United States, 146 F.Supp. 476, 134 Ct.Cl. 1, in which the court rendered a judgment holding the Government liable and plaintiff entitled to recover, and reserving for further proceedings the question of the amount of the judgment, if any, certiorari granted 352 U.S. 964, 77 S.Ct. 354, 1 L.Ed.2d 320.

▋▋ In our opinion, the basic fallacy inherent in appellant's position is that the jurisdiction of the Court of Claims to review decisions of the Indian Claims Commission is strictly and expressly limited by the Indian Claims Commission Act to review on appeal "final determinations" of the Commission whereas the jurisdiction of the Supreme Court to review decisions of the Court of Claims is by writ of certiorari[3] which writ may be granted or denied in the absolute discretion of the Supreme Court whether the order or decision to be reviewed is final or interlocutory. Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209. Accordingly, decisions of the Court of Claims deciding only the issue of liability in the Government and the right of claimant to recover are reviewed by the Supreme Court *not* because they are "final" decisions on the whole case, which they are not, Marconi Wireless Tel. Co. v. United States, 320 U.S. 1, 63 S.Ct. 1393, 87 L.Ed. 1731, but rather because the Supreme Court has discretion under 28 U.S.C. § 1255 to review decisions of this court whether they are interlocutory, as in the Marconi and Central Eureka cases, supra, or final.

▋ Although section 19 of the Indian Claims Commission Act contains a definition of a "final determination" to be rendered by the Commission, the legislative history of the Act indicates that Congress at no time specifically considered the problem of the possibility of a "final" determination short of a money judgment or a dismissal of the petition.[4] Under the circumstances, it is reasonable to conclude that section 19 of the Act was intended more as a direction to the Commission concerning the manner in which it should render its final decisions on the entire controversy before it, rather than as a definition of "finality" for the purposes of appellate review, and that in framing the appellate jurisdiction of the Court of Claims in section 20, Congress intended to import to that section the same concepts which have been applied in determining the meaning of the words "final decisions of the district courts" as those words are used in 28 U.S.C. § 1291 defining the appellate jurisdiction of the United States Court of Appeals over the decisions and orders of the United States District Courts. Howard Terminal v. United States and Federal Maritime Board, 9 Cir., 239 F.2d 336.

Section 1291 of Title 28 of the United States Code provides in part as follows:

"The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States * * * except where a direct review may be had in the Supreme Court."

▋ The jurisdiction of the circuit courts of appeals set forth in the above provision of law has been uniformly held

---

3. 28 U.S.C. § 1255 provides:
"Cases in the Court of Claims may be reviewed by the Supreme Court by the following methods:
"(1) By writ of certiorari granted on petition of the United States or the claimant;
"(2) By certification of any question of law by the Court of Claims in any case as to which instructions are desired, and upon such certification the Su-

preme Court may give binding instructions on such question."

4. A "final" decision is not necessarily the ultimate judgment or decree completely closing up a proceeding. In the course of a single proceeding there may be one or more "final" decisions on particular phases of the litigation, reserving other matters for future determination. Rubert Hermanos, Inc., v. People of Puerto Rico, 1 Cir., 118 F.2d 752.

to be purely statutory and in no sense discretionary. Cohen v. Globe Indemnity Co., 3 Cir., 120 F.2d 791. The consent of the parties that the court entertain an appeal is insufficient to confer jurisdiction if jurisdiction is otherwise lacking. Raytheon Mfg. Co. v. Radio Corporation of America, 1 Cir., 76 F.2d 943, affirmed 296 U.S. 459, 56 S.Ct. 297, 80 L.Ed. 327.

The only jurisdiction of the courts of appeals to review on appeal interlocutory orders of the district courts is specifically provided for in 28 U.S.C. § 1292 which confers upon such courts jurisdiction of appeals from interlocutory orders of the district courts (1) granting, continuing, modifying or dissolving injunctions, or refusing to dissolve or modify injunctions; (2) appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property; (3) determining the rights and liabilities of the parties in admiralty cases in which appeals from final decrees are allowed; and (4) judgments in civil actions for patent infringement which are final except for accounting.

One phase of the jurisdiction of the Supreme Court to review decisions of lower courts is also similarly limited in connection with "final" judgments or decrees rendered by the highest courts of the States, 28 U.S.C. § 1257.

The jurisdiction of the circuit courts of appeals to review orders of the various quasi-judicial and administrative agencies of the Government are carefully limited by statute.

Within the framework of the various statutes referred to above limiting the right of appeal to an appeal from a final decision, the courts have held that a decision may be sufficiently final to support an appeal even though that decision is not the ultimate judgment or decree completely closing up a proceeding. But such cases are few in view of the well recognized congressional policy against permitting cases to be litigated in a piecemeal manner and appealed in fragments.

Inasmuch as the subject matter of most of the claims being litigated before the Indian Claims Commission is land, and the issue of ownership or title is always present where the land in question is alleged to be held by so-called original Indian title, as distinguished from reservation title, the cases which have problems most closely analogous to those with which the Commission must deal are Federal district court and State court cases in which the issue of title to land is a matter for decision.

The Supreme Court has held that in condemnation cases appellate review may be had only upon an order or judgment disposing of the whole case and adjudicating all rights, including ownership and the amount of just compensation, as well as the right to take the property.[5] Luxton v. North River Bridge Co., 147 U.S. 337, 13 S.Ct. 356, 37 L.Ed. 194; Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911.

In the Catlin case, supra, a proceeding was instituted by the United States in the district court for the condemnation of land under the War Purposes Act of 1917, 50 U.S.C.A. § 171. Following the filing of a declaration of taking pursuant to the Declaration of Taking Act of 1931, 40 U.S.C.A. §§ 258a–258e, the district court entered a judgment decreeing that title to the land had vested in the United States and that the right to just compensation had vested in the prior owner. Believing that the taking was unauthor-

---

5. Review by the Supreme Court on writs of certiorari in the case of decisions of the Court of Claims adjudicating the issues of taking and ownership in the plaintiff in so-called just compensation taking cases, leaving for further proceedings the matter of the amount of just compensation, is not based on the ground that such decisions are final. Such decisions are admittedly interlocutory, but review by the Supreme Court is not limited by statute to final decisions. On the contrary the jurisdiction of the Supreme Court to review such decisions by writ of certiorari is discretionary and, as noted above, extends to interlocutory as well as final decisions.

ized by law because no valid war purpose existed to support the condemnation under the 1917 Act, the prior owner moved to vacate the judgment and to dismiss the petition of the United States as to one of the several tracts involved. The district court denied the motions and the appellant (the prior owner of the land) took an appeal to the circuit court of appeals. The Circuit Court of Appeals, 7 Cir., 142 F.2d 781 held that the order or judgment appealed from was not a final decision within the meaning of section 128 of the Judicial Code (now 28 U.S.C. § 1291). In view of contrary decisions of other circuits,[6] the Supreme Court granted certiorari and affirmed the decision of the circuit court dismissing the appeal. The Supreme Court stated in 324 U.S. at pages 233 and 234, 65 S.Ct. at pages 633 and 634:

"A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. St. Louis I. M. & S. R. Co. v. Southern Express Co., 108 U.S. 24, 28, 2 S.Ct. 6, 27 L.Ed. 638. Hence, ordinarily in condemnation proceedings appellate review may be had only upon an order or judgment disposing of the whole case, and adjudicating all rights, including ownership and just compensation, as well as the right to take the property. This has been the repeated holding of decisions here. * * * The foundation of this policy is not merely technical conceptions of 'finality.' It is one against piecemeal litigation. 'The case is not to be sent up in fragments * * *.' Luxton v. North River Bridge Co., 147 U.S. 337, 341, 13 S.Ct. 356, 358, 37 L.Ed. 194. Reasons other than conservation of judicial energy sustain the limitation. One is elimination of delays caused by interlocutory appeals."

6. City of Oakland v. United States, 9 Cir., 124 F.2d 959, certiorari denied 316 U.S. 679, 62 S.Ct. 1106, 86 L.Ed. 1753; United States v. 243.22 Acres of Land, 2 Cir., 129 F.2d 678, certiorari denied Lambert

The Supreme Court noted the reasons cited by the other circuit courts of appeals' for holding identical orders of the district courts final and appealable prior to the often long and drawn-out controversies involving valuation. The Supreme Court stated that those circuit courts had certainly thought up a good ground for Congress to provide for a special appeal from an interlocutory judgment adjudicating the issue of title, but that Congress had not expressly done so in the statutes in question.

In the Catlin case, the Supreme Court also held that the statute in question did not purport in terms to authorize such a "judgment" as was entered in that case, i. e., a judgment decreeing that title vested in the United States, nor did the statute make the entry of that judgment the event upon which title was changed, if so summary a procedure could be valid. In this connection, we note that the Indian Claims Commission Act does not appear to authorize any sort of interlocutory judgment or order such as the one issued in the case now before us, which would make the entry of that order or judgment finally binding on the parties, or make such entry the event upon which the petition of appellant could be dismissed *pro tanto*.

In Republic Natural Gas Co. v. State of Oklahoma, 334 U.S. 62, 68 S.Ct. 972, 92 L.Ed. 1212, the Supreme Court was asked to review upon appeal a decision of the highest court of the State of Oklahoma adjudicating the correlative rights of owners of natural gas drawn from a common source in that State. The decision of the Oklahoma Supreme Court, 198 Okl. 350, 180 P.2d 1009, held that Republic was taking more than its ratable share of gas from a portion of the gas field tapped by its wells and those belonging to Peerless, so that Republic was, in effect, taking property belonging to Peerless. The Oklahoma court affirmed the order of the State Corpora-

v. United States, 317 U.S. 698, 63 S.Ct. 441, 87 L.Ed. 558; Puerto Rico Ry., Light & Power Co. v. United States, 1 Cir., 131 F.2d 491.

tion Commission ordering Republic to take gas ratably from Peerless' well, to make the necessary connection as soon as Peerless had laid a connecting line, and to continue to do so until further order of the commission. The order left for further proceedings only the terms and conditions of the taking of natural gas by Republic from Peerless should no agreement on that matter be reached by Republic and Peerless. The United States Supreme Court noted that its jurisdiction to review state court decisions was only after the state court had rendered a "final judgment or decree," 28 U.S.C. § 1257. The court stated in 334 U.S. at page 67, 68 S.Ct. at page 976:

> "No self-enforcing formula defining when a judgment is 'final' can be devised. * * * The requirement of finality has not been met merely because the major issues in a case have been decided and only a few loose ends remain to be tied up —for example, where liability has been determined and all that needs to be adjudicated is the amount of damages. Bruce v. Tobin, 245 U.S. 18, 38 S.Ct. 7, 62 L.Ed. 123 * *. On the other hand, if nothing more than a ministerial act remains to be done, such as the entry of a judgment upon a mandate, the decree is regarded as concluding the case and is immediately reviewable."

Turning to the order of the Oklahoma Corporation Commission, the Supreme Court stated that the order, affirmed below, had terminated *some but not all of the issues* in the proceeding below, and that what remained to be done could not be characterized as merely ministerial. Noting that the party seeking the appeal might be subjected to inconvenience, expense and possible loss, by being required to await a truly final judgment before taking an appeal, the Supreme Court stated that such considerations did not warrant immediate review of an incomplete judgment by a state court. Holding that the rule of finality which applied in the condemnation cases was applicable to the case under considera-

tion, the Supreme Court dismissed the appeal as premature. In discussing the condemnation cases, the Supreme Court pointed out that contests over valuation of the property involved therein were inherently provocative of constitutional claims as to what was just compensation.

In the instant case there remains for decision by the Indian Claims Commission not only the question of valuation of the lands involved, but the even more difficult determination of whether, in the light of that value, the consideration actually paid to appellant by the Government was unconscionable. By the present order only a small part of the case below has been disposed of, with much remaining for future disposition by the Commission.

There have been instances where the appellate court, whose jurisdiction to review has been limited by statute to a review of "final" decisions, has reviewed on appeal an interlocutory order because the controversy had proceeded to a point where the party adversely affected by such order would be irreparably injured if such review were unavailable. In those cases, the decrees in question ordered an immediate transfer of possession of physical property, reserving for further proceedings only an accounting for profits.

In Forgay v. Conrad, 6 How. 201, 12 L.Ed. 404, Conrad, who was an assignee in bankruptcy, filed a bill against the bankrupt and against Forgay, among others, to set aside sundry deeds made by the bankrupt to Forgay for lands and slaves, on the ground that the deeds were fraudulent. The bill prayed for an account of the rents and profits of the property conveyed and for an account of the sums of money which the bankrupt had received or Forgay had received which belonged to the bankrupt's estate at the time of his bankruptcy. Following a trial, the court issued a decree declaring certain deeds to lands and slaves to Forgay to be fraudulent and void, and directing that the lands and slaves be delivered by Forgay to Conrad who should have execution of the matters

contained in the decree. The decree also directed the master to take an account of the profits of the lands and slaves ordered to be delivered up, from the time of the filing of Conrad's bill until the property was delivered, and also an account of the money received in fraud of creditors. Forgay appealed from this decree and Conrad filed a motion to dismiss the appeal on the ground that the order appealed from was not a final decree within the meaning of the acts of Congress. The Supreme Court held that the decree was not a final decree in the sense that nothing further remained to be done in the litigation, but it held that the decree did possess sufficient finality to support an appeal because it not only decided the issue of title to the property in dispute and annulled the deeds under which appellant claimed, but *it directed the property to be delivered to appellee and awarded execution thereon.* The Court stated that if appellant should be required to wait until the accounts were reported by the master and confirmed by the court, appellant might be subject to irreparable injury since the lands and slaves would be taken out of his hands and sold and the proceeds distributed among the creditors of the bankrupt before appellant could have an opportunity of being heard on appeal. The Court then stated the rule which has since been generally followed in the federal courts, that when a decree not only determines the right to the property in contest, but also directs that it be delivered up by the defendant to the complainant, or directs that it be sold, or directs the defendant to pay a certain sum of money to the complainant, and the complainant is entitled to have the decree carried immediately into execution, the decree must be regarded as having sufficient finality to support an appeal although so much of the bill is retained in court as is necessary for the purpose of adjusting by further decree the accounts between the parties pursuant to the decree issued. In the course of its opinion, the Supreme Court admonished the circuit courts to abstain from unnecessarily changing possession of property in litigation or compelling the payment of money by an interlocutory order or decree, unless the decree required the property to be placed in the hands of a receiver or a trustee, in which case the interlocutory order would not be appealable since no irreparable injury to the losing party could result from denying him the right of an immediate appeal. The court suggested that such an order would have been the proper and more desirable one in the case under consideration, since all matters could then have been decided in one final decree, and, if either party thought himself aggrieved, the whole matter would have been before the appellate court to be decided in one appeal in accordance with the object and policy of the acts of Congress on the subject of appeals.

The holding in the Forgay case, supra, was followed in Radio Station WOW v. Johnson, 326 U.S. 120, 65 S.Ct. 1475, 89 L.Ed. 2092, in which case the decree appealed from ordered that a radio lease and license be set aside and the original position of the parties be restored as nearly as possible, with an accounting to follow.

■ Where an order issued prior to final determination of the whole litigation disposes of a matter that is *collateral* and *separable* from the main suit, such an order is final and appealable. An example of this type of order is found in the case of Beneficial Industrial Loan Corporation v. Smith, 3 Cir., 170 F.2d 44, involving a stockholders' derivative action. An order denying the corporate defendant's motion to require the plaintiff to give security for reasonable expenses, including counsel fees, was held to be an order on a truly collateral matter and appealable. There the right adjudicated in the order was not an ingredient of the main cause of action, and consideration of that right was not required in connection with the cause of action sued on. See United States v. Cefaratti, 91 U.S.App.D.C. 297, 202 F.2d 13, certiorari denied 345 U.S. 907, 73 S.Ct. 646, 97 L.Ed. 1343. Another ex-

ample of an appealable order which does not amount to a final disposition of the whole case, is an order denying intervention to one having an absolute right to intervene.

■■ Because of the obvious advantages which might accrue to the parties if certain interlocutory orders of the Commission, such as the one now under consideration, were reviewable by this court on appeal, we have examined the cases decided under the All Writs statute, 28 U.S.C. § 1651, providing that the Supreme Court and all courts established by act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. We note, however, that where a statute establishes the conditions of appellate review, as in the case of section 20 of the Indian Claims Commission Act, an appellate court cannot exercise its discretion to issue a writ whose only effect would be to avoid those conditions of appellate review and thwart the well established congressional policy against piecemeal appeals. United States Alkali Export Association v. United States, 325 U.S. 196, 65 S.Ct. 1120, 89 L.Ed. 1554; United States v. Bondy, 2 Cir., 171 F.2d 642; Roche v. Evaporated Milk Association, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185; United States ex rel. Potts v. Rabb, 3 Cir., 147 F.2d 225, certiorari denied 324 U.S. 870, 65 S.Ct. 1013, 89 L.Ed. 1424.

We have also examined the cases arising under Rule 54(b) of the Federal Rules of Civil Procedure, 28 U.S.C. dealing with the rendition of a final judgment and its entry in a *multiple claims* action. We note, however, that it has been held that the rule does not supersede any statute controlling appellate jurisdiction and that the courts have carefully

recognized the statutory requirement of a "final decision" under section 1291 of Title 28 as a basic requirement for an appeal. Rule 54(b) merely administers that requirement in a practical manner in multiple claims actions. Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297; Flynn & Emrich Co. v. Greenwood, 4 Cir., 242 F.2d 737.

In Blackfeet and Gros Ventre Tribes v. United States, 119 F.Supp. 161, 127 Ct.Cl. 807, certiorari denied 348 U.S. 835, 75 S.Ct. 58, 99 L.Ed. 658, this court entertained an appeal from an order of the Indian Claims Commission granting the Government's motion to dismiss one of four separate claims brought by appellant in a single suit before the Commission. Each of the four claims sued on was entirely separate and independent of the other, and in its order dismissing the claim in question, the Commission included a determination that there was no just reason for delay and also an express direction for the entry of judgment dismissing the petition as to that claim. Although the issue was not discussed, it appears that the order represented an attempt to meet the requirements of Rule 54(b) [7] of the Federal Rules of Civil Procedure applicable to multiple claims suits. While the Commission has no such rule as 54(b) of the Federal Rules, we can think of no reason why it should not issue such a rule since its application in a proper case would not be contrary to any provision of the Indian Claims Commission Act. While the procedure outlined in the rule and followed by the Commission in the Blackfeet case has no applicability to an action involving a single claim, as in the case under consideration, it would seem to be quite appropriate in cases like the Blackfeet

---

7. Rule 54(b) provides:

"Judgment Upon Multiple Claims. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a final judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."

case where several separate and distinct claims are brought in one lawsuit.

With reference to the order which is the subject matter of the instant appeal, we are of the opinion that it does not possess such finality as will support an appeal to this court. It is true that it purports to decide the issue of title to the land which is the subject matter of the claim, but it is actually only a finding of fact on that issue. State Bank of Portland v. Gotshall, 121 Or. 92, 254 P. 800, 51 A.L.R. 1200. The issue of title to the land involved in this case is not a collateral or truly separable matter but is rather an indispensable ingredient of the appellant's primary claim before the Commission. Although problems will necessarily arise with respect to whether or not the parties should offer proof of value of the land which the Commission has found was not owned by appellants, and the parties will understandably wish to be spared the time and expense of securing appraisals of this land if that should turn out to be unnecessary, such considerations as these have never been held to warrant review by an appellate court where its jurisdiction to review has by statute been limited to final decisions. Additional expense and inconvenience has not been considered to amount to irreparable injury. In Flynn & Emrich Co. v. Greenwood, 4 Cir., 242 F.2d 737, the district court heard and decided the question of estoppel preliminarily in a patent infringement case and decided the issue in favor of the plaintiff in advance of a hearing on the defense of infringement and validity. The district court rendered a judgment on the issue of estoppel and certified under Rule 54(b) of the Rules of Civil Procedure that no just reason existed for delay in the entry of final judgment upon the counterclaim of defendants and directed that a separate final judgment should be entered thereon without awaiting the trial of the principal action. From this adverse decision on the issue of estoppel, there was an appeal. Neither party raised the question of the jurisdiction of the court of appeals to review the order, but the matter was raised by the court itself, noting that appellate jurisdiction *could not be conferred upon it by consent of the parties* and that the court was bound to consider the matter of its jurisdiction to review the case. See also Brauer Mach. & Supply Co. v. Parkhill Truck Co., 383 Ill. 569, 50 N.E.2d 836, 148 A.L.R. 1208. The court of appeals then held that the district court could not treat as final that which was not final within the meaning of section 1291 of Title 28. It held that the issue of estoppel which was raised by the counterclaim of defendant could have been asserted as a defense to the principal action and, under Rule 8(c), would have to be pleaded affirmatively. The court held that there was really only one claim for relief, i. e., patent infringement, and regardless of what it was called, the element of estoppel was asserted as a matter of defense only. The court held that to be appealable, a judgment, even though certified by the district judge as final, must finally dispose of a claim and not merely adjudicate a defense to a claim. The court then said regarding the obvious inconvenience to the parties of requiring them to await final adjudication of the main suit before having a review of the defense of estoppel:

"It would doubtless be convenient to the parties for us to pass upon this affirmative defense in advance of the trial of the case, but it would establish a precedent which might be very harmful in the administration of justice. The rule of the statute forbidding fragmentary appeals is a wise and salutary one, not only from the standpoint of protecting the appellate courts from an unnecessary burden, but also from the standpoint of a proper administration of justice. The delays which have resulted from allowing interlocutory appeals, in the states which permit them, have been a source of criticism; and every judge knows that an appellate court can handle a case much more understandingly af-

ter final disposition, than by piece-meal decisions in interlocutory orders." [242 F.2d 741.]

See also Western Contracting Corp. v. National Surety Corp., 4 Cir., 163 F.2d 456.

In a sense what the Indian Claims Commission has adjudicated, in the proceedings below, is the Government's defense of "no title" in claimants. In another sense it has made a finding of fact on the claimant's allegation of ownership, i.e., original Indian title, of the land for which it claims it received an unconscionable consideration. However we characterize the order below, it is not a final order which will support an appeal within the jurisdiction of this court under section 20 of the Indian Claims Commission Act nor within the precedents laid down by the federal courts and the Supreme Court under similar appellate statutes. We are of the opinion that if the order in question and others like it are to be reviewable on appeal to this court, that must be by congressional mandate. See 28 U.S.C. § 1292 providing for appellate review in the circuit courts of appeals of certain specified interlocutory orders of the district courts. McCullough v. Kammerer Corp., 331 U.S. 96, 67 S.Ct. 1165, 91 L.Ed. 1365.

Under the circumstances, the views of the Indian Claims Commission, expressed in the order appealed from, have not yet assumed finality, and, until final judgment is entered disposing of the entire proceeding, the Commission is at liberty to alter the views therein expressed. Accordingly, there can arise no problem of estoppel by judgment for either party.

We are aware of the problems which the parties face in connection with the matter of deciding whether or not to secure appraisals of all of the land involved in the claim or only of that part of the land which the Commission has found to have been held by appellant under Indian title in 1835—a problem which would, of course, be solved if we had jurisdiction to review upon appeal the order of the Commission. However, we feel at liberty to express the opinion that despite the wording of the order and of finding 12 of the Commission, the parties may take an exception and at least make an offer of proof as to the value of all of the land covered by the claim, including that portion of the land excluded by finding 12, having in mind the problem of unit valuation. On the other hand, if the appellant should decide to limit its proof of value to that portion of the land which the Commission has found it held by original Indian title in 1835, and, subsequently, upon appeal from a final judgment in the case, this court should reverse the finding of partial ownership on the record and remand the case for further proceedings on the matter of the value of all or part of the land eliminated by the Commission in finding 12, proof of such value could be offered before the Commission at that time.

In conclusion, we hold that under the provisions of sections 19 and 20 of the Indian Claims Commission Act, and in view of the long line of precedents against appellate review of non-final decrees,[3] this court has no alternative but to dismiss the appeal.[9]

8. In Baltimore Contractors, Inc., v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L. Ed. 233, the Supreme Court dismissed an appeal from an order denying a stay pending arbitration in an action for an accounting noting that the order was merely a step in controlling the litigation before the trial court. In the course of the opinion Justice Reed discusses the history of present section 1291 of Title 28, beginning with section 22 of the Judiciary Act of 1789, 1 Stat. 73, 84.

9. In passing, we call attention to a discrepancy, no doubt inadvertent, between the provisions of the order in question and the decision of the Commission on which it was based. The decision of March 8, 1956 finds that the appellant owned a certain described area of land set forth in finding 12 and the Commission concludes that the appellant is entitled to "an award for the value of the same, as of July 1, 1835, *if the consideration paid by defendant was uncon-*

The appellee's motion to dismiss is granted and the appeal is dismissed as premature.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.

LARAMORE, Judge, took no part in the consideration and decision of this case.

*scionable or inadequate, * * *."* Such a conclusion would, of course, be pertinent to the claim asserted by appellant in its petition. The order of the same date and as finally amended on January 2, 1957, omits the italicized portion quoted above and concludes merely that appellant is "entitled to an award for the value of said land as of July 1, 1835". On the claim asserted, appellant will be entitled to an award, if any, representing the difference between the consideration received and the value of the land owned and ceded, *if*, in the opinion of the Commission, the difference is so great that it shocks the conscience and is therefore unconscionable. In view of our holding that the order appealed from is not a final order and the findings and conclusions reached by the Commission are subject to change during the further course of the proceedings, the Commission may wish to alter or even vacate the order in question.

What we have said in this opinion should not be construed as either criticism of or even comment on the manner in which the Commission and the parties have chosen to try the case under consideration. If, as in this case, the Commission and the parties deem it desirable to hold a separate hearing and issue interlocutory findings of fact and conclusions of law on the issue of title prior to trying the issue of liability and the amount of recovery, if any, less allowable offsets, they are certainly at liberty to do so. We are merely passing upon the jurisdiction of this court to review on appeal such an interlocutory determination.