This case comes before the court on defendant’s motions to dismiss plaintiffs’ Exceptions Nos. 14, 15, 16, and 27 on the ground of res judicata. It is one of several related cases brought under the Indian Claims Commission Act of 1946, 60 Stat. 1049, docket Nos. 19,188,189-A, 189-B, 189-C, and *737 19 and 189-A consolidated. Defendant asserts that these issues are foreclosed because they were dismissed with prejudice by the Indian Claims Commission (Commission) and plaintiffs failed to seek a timely rehearing. Alternatively, defendant asserts that these issues are foreclosed because, Commission rulings aside, they were or could have been determined in previous litigation, brought under the provisions of the Nelson Act of 1889, 25 Stat. 642, by the Minnesota Chippewa against the United States. Chippewa Indians of Minnesota v. United States, 80 Ct.Cl. 410 (1935), aff’d, 301 U.S. 358 (1937) [hereinafter cited as No. H-761]: Chippewa Indians of Minnesota v. United States, 87 Ct.Cl. 1 (1938), aff’d, 305 U.S. 479 (1939) [hereinafter No. H-192]; Chippewa Indians of Minnesota v. United States, 88 Ct.Cl. 1 (1938), aff’d, 307 U.S. 1 (1939) [hereinafter No. H-155]; Chippewa Indians of Minnesota v. United States, 90 Ct.Cl. 140 (1940) [hereinafter No. H-163]; Chippewa Indians of Minnesota v. United States, 91 Ct.Cl. 97 (1940) [hereinafter No. H-135] [hereinafter referred to collectively as the Nelson Act cases]. Specifically, defendant argues that Exceptions Nos. 14, 15, 16, and 27 could have been raised and litigated in No. H-192. Alternatively, defendant submits that Exceptions Nos. 14 and 16 could have been raised and litigated in No. H-155.
Plaintiffs’ Exceptions Nos. 14, 15, 16, and 27 relate to their assertion that the inclusion of certain Nelson Act lands within the Minnesota National Foret constituted a fifth amendment taking of Chippewa property. By the Act of May 23, 1908, 35 Stat. 268, Congress created what became known as the Minnesota National Forest, embracing part of 200,000 acres of what was then Chippewa forestry lands. The Secretary of the Interior was authorized to sell all but 10 percent of the merchantable pine on that part of the Chippewa forest. The 1908 Act provided that "a commission of three persons shall at once be appointed * * * and said commissioners shall proceed forthwith to appraise the value” of certain timber on the land. In addition, the Commission was directed to ascertain the acreage of "actual land” included under the 1908 Act and was instructed to add to the timber values $1.25 per acre of land taken. The amount was to be credited to the Chippewa *738 Indians "permanent fund,” a 5 percent interest-bearing account, which was created by the Nelson Act. The appraisal commission was not appointed until December 18, 1922, and the appraisal report was filed then later approved on April 9,1923.
Exception No. 14 alleges a failure to credit the Chippewa interest-bearing account with sums appropriated by Congress on March 3, 1926, as compensation for timber and interest as of May 23, 1908. Exception No. 15 raises a claim that defendant failed to correctly compute just compensation on land and timber taken for the Minnesota National Forest. Exception No. 16 raises the claim of failure to credit the Chippewa interest-bearing fund with sums paid as just compensation as of May 23, 1908, the date of the act creating the Minnesota National Forest instead of May 31, 1923. Finally, Exception No. 27 claims the fair market value of the 191,000 acres included in the Minnesota National Forest rather than the "arbitrary” price of $1.25 per acre.
I
First, we address the issue of the Commission’s dismissal of the above exceptions. 29 Ind. Cl. Comm. 211, 220-25 (1972). The Commission dismissed plaintiffs’ Exceptions Nos. 14, 15, 16, and 27 with prejudice. The dismissal was based on the ground of res judicata. The Commission found that these claims could have been raised and litigated in No. H-192. Defendant contends that plaintiffs failed to seek a timely rehearing of the Commission’s dismissal of these exceptions, and the ruling that res judicata was applicable to these exceptions is now law of the case. In support of its position, defendants cite United States v. Turtle Mountain Band of Chippewa Indians, 222 Ct.Cl. 1, 612 F.2d 517 (1979). In Turtle Mountain, we applied the doctrine of law of the case to this court’s affirmance on interlocutory appeal of a Commission determination. See also Three Affiliated Tribes of the Fort Berthold Reservation v. United States, 204 Ct.Cl. 831, cert. denied, 419 U.S. 901 (1974). We explained the rule that "once affirmed on appeal, * * * an [interlocutory] order loses its interlocutory character and becomes law of *739 the case.” 222 Ct. Cl. at 7, 612 F.2d at 520-21 (quoting United States ex rel. Greenhalgh v. F. D. Rich Co., 520 F.2d 886, 889 (9th Cir. 1975). (Other citations omitted.) It is apparent that defendant’s invocation of Turtle Mountain is inapposite, for in that case the relevant determination was our affirmance on appeal of a Commission ruling not the Commission’s ruling qua ruling. In this case defendant seeks to have this court give "law of the case effect,” to the Commission dismissal of plaintiffs’ exceptions as described above. This we cannot do. The Supreme Court has stated that "it requires a final judgment to sustain the application of the rule of law of the case * * United States v. United States Smelting, Refining & Mining Co., 339 U.S. 186 (1950), that is to say a decision in a lower court is law of the case in the Supreme Court only if it was a final judgment by the lower court, otherwise, the Supreme Court can review it. In Seminole Indians of Florida v. United States, 200 Ct.Cl. 417, 420-21, 471 F.2d 614, 615-16 (1973), we held that a Commission’s dismissal of one of two distinct claims was not a final judgment where the Commission failed to follow the rule existing prior to the adoption of the Fed. R. Civ. P. 54(b). The former finality rule regarding actions involving several distinct claims was that a decision with respect to one or more, but not all of the claims, was not final until the entire lawsuit had been decided. 200 Ct.Cl. at 420, 417 F.2d at 615. It is undeniable that this lawsuit involves multiple claims and equally undeniable that this lawsuit is not fully decided. Further, there is no evidence in the record to show that the Commission contemplated much less attempted to follow Rule 54(b) or a facsimile of that rule. The court in Caddo Tribe of Oklahoma v. United States, 140 Ct.Cl. 63, 155 F.Supp. 727 (1957) noted that in the case of Blackfeet and Gros Ventre Tribes of Indians v. United States, 127 Ct.Cl. 807, 119 F.Supp. 161, cert. denied, 348 U.S. 835 (1954), although not discussed, the Commission had in fact followed Rule 54(b) by certifying the finality of their decision dismissing one of the four claims raised by appellant. We therefore reject defendant’s contention that law of the case bars these exceptions on the ground that the Commission’s dismissal of these exceptions is not a final judgment.
*740 II
We turn to defendant’s alternative ground for its motion to dismiss, that res judicata forecloses these exceptions, since, defendant maintains, the claims could have been raised and litigated in No. H-192. Chippewa Indians of Minnesota v. United States, No. H-192, was a suit on two claims, the first for the value of timber on trust lands taken by the government under a later amendment to the Nelson Act, creating the Minnesota National Forest. The court held that a taking had occurred, but the timber in question had no ascertainable market value at the time it was appropriated, held to be May 23, 1908, the effective date of the amendment. This claim was therefore dismissed. No other claims regarding the Minnesota National Forest were decided by the court.
The basis for the second claim in No. H-192 is that erroneous surveys approved June 21, 1872, December 14, 1875, and November 23, 1885, resulted in a loss to plaintiffs of 16,365.80 acres which were appropriated by the government and disposed of under general homestead laws without any consideration to plaintiffs therefor. In H-192, finding 12, 87 Ct.Cl. at 15, the court establishes as fact that the sums involved in Exception No. 14 were credited to the Chippewa noninterest-bearing fund. As we indicated earlier, Exception No. 14 seeks to have that amount credited to plaintiffs’ interest-bearing account. It is clear that even though the issue raised in Exception No. 14 was not actually decided in No. H-192, it could have been raised and litigated. The same is true of Exceptions Nos. 15 and 16. The Commission so found and held the claims raised by Exceptions Nos. 14, 15, and 16 to be barred by res judicata. We treat Exception No. 27 differently for reasons to be discussed infra.
Under other circumstances, we would be inclined to agree with defendant and the Commission, but plaintiffs, in this consolidated case, have an answer to the application of res judicata: their claim is brought under the Indian Claims Commission Act, Section 2, clauses 3 and 5, which created new causes of action allowing revisions of agreements obtained by fraud, duress, or on grounds cognizable by a *741 court of equity, and claims based upon fair and honorable dealings. The government asserts that the question of the res judicata effect of clauses 3 and 5 is open, but Creek held that virtually regardless of the similarity of facts relied on in present substantive claims with earlier ones, the 1946 Act creates new causes of action which will not be barred by res judicata. Creek Nation v. United States, 168 Ct.Cl. at 490; Minnesota Chippewa Tribe v. United States, 227 Ct. Cl. 538, 542 (1981).
The government seems to acknowledge this state of the law, as its only real counter-argument to Creek is that plaintiffs’ exceptions are not brought under clause 3 or 5, Section 2 of the Indian Claims Commission Act. But this is simply not correct: paragraph 3 of docket No. 19 invokes the 1946 Act generally, and, construing the pleadings so as to do substantial justice (Rule 32(b)), we conclude that it alleges a clause 3 or 5 cause of action. Paragraph 1 of the complaint in No. 189-A expressly alleges jurisdiction under clauses 3 and 5. Defendant does not seriously challenge this jurisdictional allegation in its motion, therefore there is no bar.
This leaves only a claim of collateral estoppel possible, if the issues raised by the exceptions were actually and necessarily adjudicated earlier. The government does not claim that they were; it asserts that they should have been. However close the issues raised by the exceptions were to those in No. H-155, they were not identical, and thus collateral estoppel does not bar plaintiffs’ claim either.
Ill
Alternatively, defendant asserts that Exceptions Nos. 14 and 16 could have been raised and litigated in No. H-155. Defendant contends that the factual data upon which these claims are based is set forth in the 1930 GAO Report submitted in No. H-155, which case, defedant maintains, involved a cause of action for mismanagement of Nelson Act funds. We think our analysis applying Creek as we have above, is equally applicable to defendant’s contentions here.
Regarding any possible application of collateral estoppel we note the government does not assert that Exceptions *742 Nos. 14 and 16 were actually raised and litigated in No. H-155. There is language in No. H-155, 88 Ct.Cl. at 42, which would seem to suggest that the court had examined the GAO report and found it complete. This, it would appear, could render collateral estoppel appropriate up to June 30, 1927, the terminal date of the report. However, a close reading of the case reveals that our approval of the report was very general (we were not presented with these specific objections) and our conclusion was based not on its accuracy so much as the plenary power of Congress to dispose of Nelson Act funds. The court expressly held that there was no trust relationship and therefore Congress could reimburse the Treasury from Indian funds for any number of reasons within a wide ambit of discretion. The 1946 Act, however, allows defendant a range of discretion even narrower than for a trust — fair and honorable dealings, the absence of which generates enforceable moral claims — and that standard was clearly not applied in No. H-155. Further, the court stated: "[i]f, however, we are correct in holding the lands and funds to be tribal ones subject to the plenary power and authority of the Government over the same, the detailed accounting becomes immaterial.” No. H-155, 88 Ct.Cl. at 43. Thus it would seem that the court did not actually consider the specific objections here raised to the accounting, nor does it appear that the court considered the detailed accounting necessary to its holding the way it did. Collateral estoppel therefore does not bar Exceptions Nos. 14,15, and 16.
IV
We finally address whether res judicata forecloses the claim raised by Exception No. 27. The Act of May 23, 1908, 35 Stat. 268 required the formation of a commission to appraise the value of certain timber taken by the government and to ascertain the actual acreage included under the provisions of the Act, for which $1.25 per acre was to be credited to plaintiffs’ permanent fund. That commission, in its report, found that the Minnesota National Forest embraced approximately 191,000 acres of Chippewa land for which the Chippewa were to be compensated at the rate *743 of $1.25 per acre. This rate was mandated by the terms of the Act, not the conclusion of the appraiser. Plaintiffs’ Exception No. 27 challenges the $1.25 figure as "arbitrary,” and seeks recovery of the fair market value of the 191,000 acres at the time of the taking, held to be May 23, 1908, in No. H-192. Plaintiffs’ claim as set out in Exception No. 27 is for just compensation measured by the fair market value of the land taken by the government, when it created the Minnesota National Forest.
In Three Affiliated Tribes of the Fort Berthold Reservation v. United States, 182 Ct.Cl. 543, 559, 390 F.2d 686, 695 (1968), we held that where Congress designated a set price for land to be appropriated, without any provision for classification or appraisal of the land, and without the consent of the Indian owners, in such circumstances a taking claim within the meaning of the fifth amendment would lie. We articulated and applied the test of whether Congress made a "good faith effort” to ascertain and obtain for the Indian owners the value of the land. 182 Ct.Cl. at 553, 559, 390 F.2d at 691, 695. We also stated that "the Government has frequently been held liable for just compensation under the Fifth Amendment, despite payment on its part to the Indians for the land taken.” 182 Ct.Cl. at 560, 390 F.2d at 695 (citations omitted). The Fort Berthold good faith effort test was explicitly approved in United States v. Sioux Nation of Indians, 448 U.S. 371, 416 (1980).
There is nothing in the Act of May 23, 1908, which classifies or provides for appraisal of the land in question, all that is provided is for the Commission to ascertain the actual acreage to be taken and a flat fee of $1.25 per acre to be credited to the Chippewa permanent account. This court can review the adequacy of the consideration paid to Indians in determining whether just compensation has been given, by the good faith effort test. United States v. Sioux Nation of Indians, supra. We therefore must agree with defendant that plaintiffs’ taking claim could have been asserted and litigated in No. H-192. We therefore hold that to the extend plaintiffs’ Exception No. 27 raises a claim for just compensation on an alleged taking, such a claim is barred by the res judicata effect of No. H-192.
*744 Lest our holding be misunderstood, it must be emphasized that it does not foreclose, on res judicata grounds, the opportunity of plaintiffs to litigate facts underlying their Exception No. 27 claim insofar as they are founded on the Indian Claims Commission Act, Section 2, Clauses 3 and 5, 25 U.S.C. § 70a(3)(5). See United States v. Sioux Nation, 207 Ct.Cl. 234, 249, 518 F.2d 1298, 1306, cert. denied, 423 U.S. 1016 (1975). Our holding confirms our intimation in Red Lake Band v. United States, ante at 272, 667 F.2d 73, wherein it was stated that "while res judicata applies to cases brought under the 1946 Act, it does so only in a limited sense. Clause 4 for example —taking—is a cause of action cognizable prior to the 1946 Act and appears to be identical under both acts. Clause 3 and particularly 5, on the other hand, are new. Thus, even though a 1946 claim arises out of exactly the same facts as a 1926 (Nelson Act) claim, the 1946 claim is a new cause of action and not barred by res judicata if it is brought under clause 3 or 5.” (Footnotes omitted, ante at 275, 667 F.2d at 75). Paragraph 3 of docket No. 19 invokes the 1946 Act generally, and, construing the pleadings so as to do substantial justice (Rule 32(b)), we conclude that it alleges a clause 3 or 5 cause of action. Paragraph 1 of the complaint in No. 189-A expressly alleges jurisdiction under clauses 3 and 5. Defendant does not seriously challenge this jurisdictional allegation in its motion, therefore there is no bar.
it is therefore ordered that defendant’s motion to dismiss plaintiffs’ Exceptions Nos. 14, 15, and 16 is denied. It is futher ordered that defendant’s motion to dismiss plaintiffs’ Exception No. 27 is granted to the extent that Exception No. 27 raises a claim for a fifth amendment taking but denied to the extent that it states a claim for relief under the Indian Claims Commission Act, Section 2, clauses 3 and 5. Plaintiffs’ Exception No. 27 is therefore dismissed to the extent stated above.
Defendant’s motion for rehearing and suggestion for rehearing en banc were denied February 16,1982.