## UNITED STATES v. PORTNEUF-MARSH VALLEY IRR. CO.

(District Court, D. Idaho, E. D. May 23, 1913.)

1. ACTION (§ 28*)—EMINENT DOMAIN (§ 309*)—PUBLIC SERVICE CORPORATION —WRONGFUL ENTRY ON LAND—WAIVER OF TORT—ACTION FOR DAMAGES.
    Where a public service corporation, having the right of eminent domain, wrongfully enters on land required for its purposes without first

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

making compensation, the owner may waive the tort and sue on an implied contract for the value of the land taken; satisfaction of the judgment recovered operating as a grant for the public use.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 196–215; Dec. Dig. § 28;* Eminent Domain, Cent. Dig. § 825; Dec. Dig. § 309.*]

**2.** INDIANS (§ 27*)—INDIAN LANDS—RESERVATION LANDS—OCCUPANCY FOR IRRIGATION PROJECT—ACTION FOR DAMAGES.

Where the Interior Department had no authority to convey to an irrigation company the right to occupy Indian reservation lands for a reservoir site, the United States could not maintain an action for the alleged value of the land, taken and occupied by the company under a privilege granted by the Secretary of the Interior.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 19, 20; Dec. Dig. § 27.*]

**3.** WATERS AND WATER COURSES (§ 242*)—IRRIGATION RIGHTS—INDIAN LANDS —"RESERVATION" LANDS—STATUTES—REPEAL.

Act Cong. March 3, 1891, c. 561, §§ 18, 19, 26 Stat. 1101 (U. S. Comp. St. 1901, pp. 1570, 1571), grants a right of way through public lands and reservations of the United States to any canal or ditch company formed for irrigation to the extent of the ground occupied by the water of the reservoir and of the canal and its laterals, and 50 feet on each side of the marginal limits thereof. It further provides that no such right of way shall be so located as to interfere with the proper occupation of the reservation by the government. *Held*, that the term "reservation" in such act included Indian reservations, and that the act was not repealed by Act May 11, 1898, c. 292, 30 Stat. 404 (U. S. Comp. St. 1901, p. 1572), extending Rev. St. § 2339 (U. S. Comp. St. 1901, p. 1437), granting rights of way for the construction of ditches and canals used in carrying on mining operations, and authorizing the Secretary of the Interior to permit the use of a right of way through public lands of the United States, not within the limits of the military or Indian reservations, for tramroads, canals, or reservoirs, by any citizen or association of citizens engaged in mining, quarrying, or cutting or manufacturing timber.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 147, 307; Dec. Dig. § 242.*

For other definitions, see Words and Phrases, vol. 7, pp. 6140–6144; vol. 8, p. 7787.]

Action by the United States against the Portneuf-Marsh Valley Irrigation Company. On demurrer to complaint. Sustained.

C. H. Lingenfelter, U. S. Atty., of Boise, Idaho.
Edwin Snow, of Boise, Idaho, for defendant.

DIETRICH, District Judge. This is an action at law, brought by the plaintiff to recover from the defendant $2,461.30, the alleged value of 246.13 acres of land on the Ft. Hall Indian reservation in southern Idaho. The facts exhibited by the complaint are, in substance, that the defendant is a corporation engaged in constructing an irrigating system for the irrigation of lands adjacent to the reservation, a public use, and that, being in need of a reservoir site, on June 27, 1908, it made application to the Secretary of the Interior for the privilege of occupying the lands in question for such purpose. In due time the application was approved, and thereupon it constructed its reservoir.

[1] The action is brought upon the assumption that the Secretary of the Interior had no authority in law to make such a grant, and

therefore his approval of the application was without jurisdiction and of no effect. In a case where a corporation engaged in a public service, and having the right of eminent domain, wrongfully enters upon lands required for its purpose without first compensating the owner, the latter may waive the tort and sue, as upon an implied contract, for the value of the land taken; and in such case the judgment, together with the satisfaction thereof, operates to effect a grant for such public use. Doubtless this rule is here relied upon by the plaintiff as a warrant both for the form of the action and the relief sought.

[2] But, aside from the general merits of the controversy, there is, under the circumstances, an apparently insurmountable objection to the maintenance of such an action. If, as is argued by counsel for the government in support of its contention, the right of occupancy of these lands as a part of the Ft. Hall Indian reservation is guaranteed to the Indians by treaty stipulation and by act of Congress, and there is no law authorizing the Secretary of the Interior to grant to the defendant the privilege of using them for reservoir purposes, then admittedly no authority exists in the executive to convey to, or confer upon, the defendant any such right. Surely the department at whose instance the suit is brought, and under whose direction it is being prosecuted, has no greater authority to divest the Indians of their right of possession, or to alienate the title of the government, than has the Department of the Interior; and without statutory authority the court has no power indirectly to accomplish such an end. In that view, if the suit is prosecuted to judgment, and the defendant pays the full amount claimed, what rights does it acquire? If, as is contended, the approval of the Secretary of the Interior is without efficacy, what protection would such a judicial record afford to it if subsequently the Interior Department, charged with the duty of protecting the Indians and vindicating their rights, should demand that the lands be vacated? According to the plaintiff's contention, in Congress alone rests the power to dispose of the lands, and Congress has not authorized any disposition thereof, either by direct sale or indirectly through the operation of a judicial decree. For these reasons alone it must be held that the action cannot be maintained.

[3] But also upon the merits, it is thought, the demurrer is well taken. In approving the defendant's application the Secretary of the Interior doubtless assumed to act under sections 18 and 19 of the act of March 3, 1891 (26 Stat. 1101, c. 561 [U. S. Comp. St. 1901, pp. 1570, 1571]) entitled "An act to repeal timber culture laws, and for other purposes," by which a "right of way through the public lands and reservations of the United States" is granted to any canal or ditch company, formed for the purpose of irrigation and complying with its requirements, "to the extent of the ground occupied by the water of the reservoir and of the canal and its laterals, and fifty feet on each side of the marginal limits thereof." It is further provided that no such right of way shall "be so located as to interfere with the proper occupation by the government of any such reservation," and further that all maps of location shall be subject to the approval of the department having jurisdiction of such reservation. Section 19 pre-

scribes the manner in which the canal company must proceed in order to acquire the right. Unquestionably, if at the time the defendant made its application the Secretary had any authority whatsoever to approve the application of any canal company for a right of way upon an Indian reservation, under any circumstances or upon any conditions, the propriety or wisdom of his approval cannot now be called into question. If we assume that he had jurisdiction to entertain such application, admittedly his action thereon was conclusive, and is not subject to collateral inquiry; and the only question, therefore, is one of jurisdiction.

It is not altogether clear from the plaintiff's brief whether it contends that by the act of March 3, 1891, no such authority ever was conferred upon the Secretary of the Interior, or only that in so far as that act purports to confer the authority it has been repealed. That the authority was originally conferred I have no doubt. When the act was passed it must have been contemplated that its application would be largely, if not entirely, confined to the Western states, and the "reservations" most prominently in mind must have been Indian reservations, for they were at the same time numerous and the most extensive reservations in the West. That an Indian reservation is a "reservation of the United States" admits of little doubt. L. L. & G. R. Co. v. U. S., 92 U. S. 733, 23 L. Ed. 634; M., K. & T. R. Co. v. Roberts, 152 U. S. 114, 14 Sup. Ct. 496, 38 L. Ed. 377; In re Rio Verde Canal Co., 27 Land Dec. Dep. Int. 421. In this last case Mr. Secretary Bliss advisedly held the statute to be applicable to Indian reservations, and very persuasively states the reasons for such conclusion. It is pointed out that there is no apparent reason why an Indian reservation should not be subject to the grant of a right of way the same as any other reservation, especially in view of the fact that the Executive Department having jurisdiction thereof may determine whether a right of way can be granted without injury to the general purpose of the reservation, and extend or withhold approval accordingly.

The principal contention seems to be that this provision of the act of March 3, 1891, was by necessary implication repealed by the act of May 11, 1898 (30 Stat. 404, c. 292 [U. S. Comp. St. 1901, p. 1572]), amending an act approved January 21, 1895, entitled "An act to permit the use of a right of way through the public lands for tramroads, canals, and reservoirs, and for other purposes" (Act Jan. 21, 1895, 28 Stat. 635, c. 37 [U. S. Comp. St. 1901, p. 1572]), which in turn seems to be an amplification of section 2339 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 1437), granting rights of way for the construction of ditches and canals used in carrying on mining operations. The section is embraced in chapter 6, entitled "Mineral Lands and Mining Resources." The act of January 21, 1895, provides:

"That the Secretary of the Interior be, and he hereby is, authorized and empowered under general regulations to be fixed by him to permit the use of the right of way through public lands of the United States, not within the limits of any park, forest, military or Indian reservation, for tramroads, canals, or reservoirs, to the extent of the ground occupied by the water of

the canals and reservoirs, and fifty feet on each side of the marginal limits thereof, or fifty feet on each side of the center line of the tramroad, *by any citizen or any association of citizens of the United States engaged in the business of mining or quarrying, or of cutting timber and manufacturing timber."*

It will thus be seen that the scope of this grant is entirely distinct from that of the grant of March 3, 1891, which pertains exclusively to the subject of irrigation, while this act has to do only with mining and quarrying, and with the lumbering industry. The act of May 11, 1898, amends the act of 1895 by adding thereto two paragraphs, the first of which simply provides that, in addition to mining, quarrying, and lumbering, the tramways, canals, or reservoirs for which rights of way may be appropriated may be used for "the purpose of furnishing water for domestic, public, and other beneficial uses." It is doubtless true that this language is broad enough to include the use to which water was to be applied under the act of March 3, 1891; but it is clear beyond peradventure that it was not intended thereby to repeal the earlier act, because in the succeeding paragraph it is declared:

"That the rights of way for ditches, canals or reservoirs heretofore or hereafter approved under the provisions of sections 18, 19, 20, and 21" of the act of March 3, 1891, "may be used for purposes of a public nature; and said rights of way may be used for purposes of water transportation, for domestic purposes, or for the development of power, as subsidiary to the main purpose of irrigation."

Here is an express recognition of the fact, not only that rights of way for ditches and canals had theretofore been approved under the earlier act, but that they might thereafter be approved, and surely there could be no subsequent approval if at the time it was intended that the act conferring the authority to approve should then and there stand repealed. Instead of an intention to repeal the act of March 3, 1891, it was clearly the purpose of Congress to leave it intact, and to supplement and enlarge its scope by providing that the canals constructed in accordance with its provisions might be used not only for furnishing water for irrigation purposes, but also for other purposes of a public nature, such as transportation and power, so long as such purposes were subsidiary to the main purpose of irrigation.

The argument that the granting of such rights of way upon reservation lands operates as an injustice to the Indians is based upon an assumption of conditions which do not necessarily exist. The construction of an irrigation system in part upon reservation lands may or may not diminish the value of the reservation as a whole. Conditions may be readily imagined where the value would be enhanced rather than diminished. Presumably, and such was doubtless the view of Congress, the Executive Department will not give its approval to an appropriation substantially prejudicial to the interests of the Indians, and here we are not advised of the conditions or terms upon which the Secretary indorsed his approval.

Accordingly the demurrer will be sustained, and the complaint dismissed.