Certiorari to review judgment of the Court of Claims dismissing the petition of plaintiffs asserting two claims against the United States, under the Act of May 14, 1926, as amended.
The judgment of the Court was affirmed January 8, 1939 (305 U. S. —), in an opinion as follows:
The Chippewa Indians filed suit in the Court of Claims asserting two separate claims against the government. The government pleaded offsets greatly in excess of the claims of the Tribe. Dismissing the Tribe’s petition as to both its claims, the Court found it unnecessary to pass upon the government’s offsets, and therefore denied them without prejudice. The cause is here on appeal by virtue of a Special Act of Congress requiring our review of the judgment of the Court of Claims.
As to the first claim. A Congressional Act of May 23, 1908, created a National Forest upon lands then in possession of the United States but held by the government as a trustee for the benefit of the Chippewa Indian Tribe. This Act authorized the Secretary of the Interior to “proceed with the sale of the merchantable pine timber” upon certain of these lands; and provided for an appraisal “forthwith” of the timber on the lands; for payment to the Indians of the appraised value plus payments received from the sale of any timber by the Secretary of the Interior prior to the appraisal; and for payment to the Tribe ox $1.25 per acre for all of the lands appropriated. Appraisal was not made “forthwith”, but in 1922. In 1908, when the Act was passed, certain types of the timber were not “merchantable” and had no value. By 1923, however, when the appraisal was completed and approved, these particular timbers were appraised at $1,060,887.07. In view of the long delay in making the appraisal and payment, approximately $490,000 in interest was appropriated for the benefit of the Tribe in 1926. The Court of Claims construed the 1908 Act as an appropriation of the lands and timber for a public use at the date of enactment, and finding the timbers in question without a merchantable value at that time, decided against the Tribe on this claim.
The sole question raised by appellants’ assignment of error with reference to this first claim attacks the Court of Claims’ holding — based on its construction of the Act *756 of 1908 — that the appropriation of the Tribe’s land and timber was effected by that Act and as of the date of the Act, and that court’s failure to hold that the appropriation occurred when the timber was appraised and the appraisal approved in April, 1923.
The findings do not show as clearly as might be desired that the timber was without merchantable value in 1908. However, there is a complete absence of any controversy on this point, and appellants were not denied the right to introduce evidence to establish the value of the property. When these findings are considered with the pleadings and are clarified by the opinion of the court below, all possible doubt as to their meaning disappears, and they show that the Court found a lack, of any merchantable value in 1908.
Actual appropriation of the land or timber by the United States is admitted. Just compensation for the property appropriated must be its value as of the date when the Tribe’s interest in the property was taken. It is agreed that until the passage of the Act of 1908 the government held possession of the land and timber as trustee for the Tribe. Under that trust the government was charged with disposal of the property for the benefit of the Tribe. If the Act of 1908 actually deprived the Tribe of its beneficial interest in the property, the Act represented an exercise of the power of eminent domain and vested — when enacted — complete title in the government. This would be an appropriation — a complete taking of property — at the time the Act became effective.
We need look no further than the language of this Act to ascertain its effect. The very first words after the enacting clause are “. . . There is hereby created in the State of Minnesota a National Forest consisting of lands and territories described as follows, . . .” There follows a description of the lands in question by metes and bounds. Throughout the Act there are repeated declarations referring to the National Forest “hereby created.” It would have been difficult for Congress to have selected language more clearly expressing the intent and purpose to deprive the Tribe completely — by the Act — of all its remaining beneficial interest in the property.
Appellants urge that appropriation of the property did not take place until the appraisal of the timber was approved in 1923. In support of this contention they rely chiefly upon the following provisions of Section 5 of the Act: “. . . all monies received from the sale of timber from any of the land set aside by this Act for a National Forest, prior to the appraisal herein provided *757 for . . . shall be placed to the credit of the Chippewa Indians in the State of Minesota . . . and after said appraisal the National Forest hereby created, as above described, shall be subject to all general laws and regulations . . . governing National Forests, . . But this provision by its very terms characterizes the property as “the National Forest hereby created” and directs disposition of “all monies received and the sale of timber from any of the land set aside by this Act for a National Forest, . . [Italics supplied.] The fact that the lands were not to be subjected to the general laws and regulations governing National Forests until after the appraisal was made indicates no congressional intent to delay the creation of the National Park. The government already had legal title to, and possession of the property, and the Act contemplated that the appraisal should be made “forthwith.” Since the Tribe was to be paid the appraised value of all the timber, the Act appropriately provided that proceeds for sales of any timber sold before appraisal should be paid to the Tribe,
Upon examination of the Act we are of the opinion that the Court of Claims correctly decided that the appropriation of the land and timber occurred in 1908, when the Act became the law, and that accordingly it properly dismissed the claim.
Second. The jurisdictional Act under which the petition in this cause was filed conferred jurisdiction upon the Court of Claims “to hear, examine, and adjudicate and render judgment in any and all legal and equitable claims arising under or growing out of the Act of January, 14, 1889 . . ., or arising under or growing out of any subsequent Act of Congress in relation to Indian affairs which said Chippewa Indians of Minnesota may have against the United States, . . .” Appellants’ second claim was based upon allegations that the government made erroneous surveys of Indian lands between and including the years 1872 and 1885; that these errors resulted in wrongfully excluding the lands from Indian reservations; and that the government thereafter appropriated and sold these lands (some of which belonged to appellants) before the Act of 1889 was passed. Inspection of the 1889 Act discloses that none of its provisions related to these lands previously disposed of by the government. Its terms were restricted to the Chippewa reservations then existing (1889) in Minnesota. None of the subsequent Acts, relating to Indian affairs, upon which appellants rely expanded the provisions of the 1889-Act so as to include Congressional treatment of the *758 transactions made tlie basis of this second claim. Since this second claim did not arise from or grow out of the 1889 Act or subsequent Acts, the Court of Claims properly dismissed for want of jurisdiction.
The judgment is affirmed.
Mr. Justice Black
delivered the opinion of the Court.