425 F.2d 317
 UNITED STATES of America, Plaintiff-Appellant,
v.
10.69 ACRES OF LAND, MORE OR LESS, IN YAKIMA COUNTY, State of Washington, and the Confederated Tribes and Bands of the Yakima Indian Nation, et al., Defendants-Appellees.
 No. 23443.
 United States Court of Appeals, Ninth Circuit.
 April 2, 1970.
 Rehearing Denied June 8, 1970.
 
 Jacques B. Gelin, Edmund Clark, Shiro Kashiwa, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Ronald R. Hull, Asst. U. S. Atty., Dean C. Smith, U. S. Atty., Yakima, Wash., for appellant.
 James B. Hovis, Smith, Scott & Hanson, Yakima, Wash., for appellee.
 Before CHAMBERS, BROWNING and KILKENNY,* Circuit Judges.
 BROWNING, Circuit Judge:
 
 
 1
 Invoking the provisions of 23 U.S.C. § 107(a), the State of Washington requested the Department of Transportation to acquire 10.69 acres of land in Yakima County, Washington, for use in the construction of an interstate highway. The lands in question are Indian tribal lands held in trust by the United States for the benefit of the Confederated Tribes and Bands of the Yakima Indian Nation.
 
 
 2
 The Department of Justice, acting at the request of the Department of Transportation, commenced this proceeding to condemn the lands. The district court dismissed. We affirm, on the ground that these lands can be appropriated for highway purposes only by utilizing the administrative procedures provided for in 23 U.S.C. §§ 107(d) and 317.
 
 
 3
 23 U.S.C. § 107(a) authorizes the Secretary of Transportation, at the request of a State, "to acquire lands or interests in lands * * * required by such State for rights-of-way or other purposes, in connection with the * * * Interstate System" of highways.[1]
 
 
 4
 23 U.S.C. § 107(d) provides that whenever rights of way for the Interstate System are required "over lands or interests in lands owned by the United States, the Secretary may make such arrangements with the agency having jurisdiction over such lands as may be necessary to give the State * * * adequate rights-of-way * * *."
 
 
 5
 23 U.S.C. § 317 details the procedure to be followed in appropriating "lands or interest in lands owned by the United States * * * for the right-of-way of any highway." Subsection (a) of section 317 provides that the Secretary of Transportation "shall file with the Secretary of the Department supervising the administration of such lands or interests in lands a map showing the portion of such lands or interests in lands which it is desired to appropriate." Subsection (b) provides that the lands may be appropriated for highway purposes if within four months after the filing of the map by the Secretary of Transportation the Secretary of the Department having jurisdiction over the lands either (1) does not certify to the Secretary of Transportation that appropriation of the lands for highway purposes would be "contrary to the public interest or inconsistent with the purposes for which such land * * * [has] been reserved," or (2) does agree to the appropriation for highway purposes under such conditions as "he deems necessary for the adequate protection and utilization of the reserve." Subsection (c) provides that when the lands are no longer needed for highway purposes they "shall immediately revert to the control of the Secretary of the Department from which they had been appropriated."
 
 
 6
 There is no doubt that sections 107 and 317 are to be read together. Both were included in Title 23 when it was enacted into positive law as a comprehensive codification of all congressional enactments on the subject of highways;[2] the codification legislation was deliberately delayed in order that the provisions of the Federal-Aid Highway Act of 1956, which included what is now section 107 of Title 23, could be incorporated in it;[3] conforming language changes were made in both section 107 and section 317;[4] and a new subsection was added to section 317 which explicitly states that "[t]he provisions of this section shall apply * * * to projects constructed on a Federal-aid system."[5]
 
 
 7
 The apparent scheme of these statutory provisions is that when property owned by the United States is to be appropriated for highway purposes the Secretary of Transportation must comply with the administrative procedures established by sections 107(d) and 317.
 
 
 8
 The reason seems plain. When property sought for highway purposes is owned by third persons, no conflicting governmental use is likely to be involved. When the property is already owned by the United States, however, the possibility of a potentially conflicting governmental use is substantial. For this reason sections 107(d) and 317 require the Secretary of Transportation to give notice of the proposed appropriation for highway purposes to the Secretary of the Department having control of the land, and provide a means by which the latter may protect any governmental interest in use of the property for purposes other than highway construction.
 
 
 9
 This interpretation of sections 107(a) and (d) and 317 of Title 23 is reinforced by complementary provisions in Title 25 relating specifically to Indian lands.
 
 
 10
 Sections 311 and 357 of Title 25 (which originated as sections 4 and 3, respectively, of the Act of March 3, 1901), and sections 323-328 of that Title, reflect essentially the same distinction as that found in the Title 23 provisions. Section 357 of Title 25 provides that lands allotted to Indians in severalty may be taken by condemnation. But section 311 provides that Indian reservation lands, and lands allotted in severalty but without full power of alienation, may be used for highway purposes by authorization of the Secretary of Interior[6] "upon compliance with such requirements as he may deem necessary." And, similarly, sections 323-328 of Title 25, enacted as a later, general, statute (Act of February 5, 1948, c. 45, 62 Stat. 17), provide that the Secretary of Interior may grant rights of way for all purposes, "subject to such conditions as he may prescribe,"[7] across lands held in trust by the United States for individual Indians or tribes, or owned by them subject to restrictions against alienation, or acquired or set aside for the use and benefit of the Indians, "upon application by the department or agency having jurisdiction over the activity for which the right-of-way is to be used."
 
 
 11
 The structure of these provisions of Titles 23 and 25, and the evident purpose they serve, offer strong support for interpreting sections 107(a) and (d) and 317 of Title 23 to mean that Indian tribal lands may be secured for highway use only by administrative appropriation under sections 107(d) and 317, and not by condemnation under section 107(a). The officials most immediately concerned with the administration of the federal highway program are apparently of the same view.[8]
 
 
 12
 The government's arguments to the contrary are not persuasive.
 
 
 13
 We agree, of course, that Congress may provide for the condemnation of Indian tribal lands,[9] and that the taking of Indian lands may be authorized by a general statute without a specific reference to such lands.[10] But these generalizations do not establish that Congress intended 23 U.S.C. § 107(a) to authorize the Secretary of Transportation to condemn Indian tribal lands for highway purposes whenever he thought it desirable to do so, and thus to circumvent the Department of Interior, which has had jurisdiction over Indians and their property for over 120 years,[11] and negate the protective purposes evident in 25 U.S.C. §§ 323-328.
 
 
 14
 The government contends that the reference in section 107(d) "[to] lands or interests in lands owned by the United States," was intended to limit administrative appropriation to lands in which the United States owns the beneficial interest. But the ordinary meaning of these words encompasses the fee title interest of the United States in tribal lands involved here; and obviously there is substantial reason for requiring the consent of the relevant Department where the government's interest is that of a fiduciary charged with protecting the interests of designated beneficiaries. Moreover, as originally enacted, the phrase in 23 U.S.C. § 107(d) read "public lands or reservations of the United States"[12] — which in similar context has been held to include Indian reservations[13] — and the change to the present language was made only "for purposes of clarity." H.R.Rep. No. 1938, 85th Cong. 2d Sess., 34 (1958).
 
 
 15
 The government argues that since 23 U.S.C. § 107(d) states that the Secretary of Transportation "may" make right-of-way arrangements with the Secretary of the Department having jurisdiction over the lands, it merely provides a permissible alternative to condemnation which the Secretary of Transportation in his discretion may choose to ignore. But this argument runs directly contrary to the language of 23 U.S.C. § 317, which provides in mandatory terms that the Secretary of Transportation "shall" file a map of the lands sought with the Secretary of the Department supervising the administration of the lands, and empowers the latter to bar appropriation for highway purposes or condition such appropriation upon terms which will protect the governmental interest in continued utilization of the reserve for non-highway purposes.
 
 
 16
 The mandatory, protective, provisions of section 317 have governed the appropriation of public lands for highway purposes since 1921.[14] There is nothing in the legislative history of section 107(d), enacted 35 years later,[15] which suggests that Congress intended to abandon the mandatory aspect of section 317 and vest absolute discretion in the Secretary of Transportation to take any public lands for highway purposes.
 
 
 17
 There is no intermediate position. If the government's interpretation of section 107(d) were accepted, the Secretary of Transportation would be equally at liberty to condemn a right of way for the Interstate System of highways through national parks and military reservations without regard to the Department of Interior or the Defense Department.
 
 
 18
 Certainly such a result is not required by use of the permissive "may" in section 107(d). When requested by a State to acquire lands for use in the Interstate highway system, "the Secretary is authorized * * * to acquire * * * such lands or interests in lands by purchase, donation, condemnation or otherwise" (23 U.S.C. § 107(a)); and when lands owned by the United States are involved "the Secretary may make such arrangements with the agency having jurisdiction over such lands as may be necessary * * * to give the State or other person * * * adequate rights-of-way * * *." (23 U.S.C. § 107(d)) (emphasis added). Both subsections merely confer authority upon the Secretary which he may or may not choose to use; they are permissive only in the sense that the Secretary of Transportation is not compelled by either to exercise the authority conferred.
 
 
 19
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 *
 Serving as United States District Judge at time of submission
 
 
 [1]
 Section 107(a) provides in pertinent part:
 "In any case in which the Secretary is requested by a State to acquire lands or interests in lands * * * required by such State for rights-of-way or other purposes in connection with the * * * Interstate System, the Secretary is authorized, in the name of the United States * * * to acquire * * * such lands or interests of lands by purchase, donation, condemnation, or otherwise in accordance with the laws of the United States * * * if [the Secretary finds that the State is unable to acquire the land or cannot acquire it `with sufficient promptness,' and the State agrees to pay 10% of the cost to the government] * * *."
 Since the lands involved were unallotted tribal lands held in trust by the United States, it is conceded that the State could not condemn them. Compare 25 U.S.C. § 357, which permits condemnation by the State for any public purpose of "[l]ands allotted in severalty to Indians. * *" See United States v. 2005.32 Acres of Land, 160 F.Supp. 193, 199 (N.D. S.Dak.1958.) See also United States v. Oklahoma Gas & Electric Co., 318 U.S. 206, 214-215, 63 S.Ct. 534, 87 L.Ed. 716 (1943).
 
 
 [2]
 Act of Aug. 27, 1958, Pub.L. No. 85-767, 72 Stat. 885;see S.Rep. No. 1928, 85th Cong., 2d Sess. (1958), U.S.Code Cong. & Admin.News, p. 3942.
 
 
 [3]
 S.Rep. No. 1928,supra, at 3.
 
 
 [4]
 The phrase "lands or interests in lands owned by the United States" was substituted for "public lands or reservations of the United States" in both sections
 
 
 [5]
 23 U.S.C. § 317(d). "Federal-aid systems" are described in 23 U.S.C. § 103 as including the Interstate System; and section 107 expressly applies to the Interstate System
 
 
 [6]
 Jurisdiction of Indian matters has been vested in the Department of Interior since its establishment. Act of March 3, 1849, c. 108, § 5, 9 Stat. 395See U. S. Dep't of Interior, Federal Indian Law 219 (1958); Note, The Indian: The Forgotten American, 81 Harv.L.Rev. 1818, 1819 (1968).
 
 
 [7]
 Conditions normally imposed are listed in 25 C.F.R. § 161.5
 
 
 [8]
 Policy and Procedure Memorandum 80-8 was issued by the Bureau of Public Roads, Department of Transportation, on April 17, 1967, "to prescribe the policies and procedures relating to the acquisition by the State of land or interests in lands owned by the United States for highway purposes," under 23 U.S.C. §§ 317 and 107(d). It provides that applications for rights of way across Indian lands shall be filed with the Department of Interior in accordance with the regulations established by the Bureau of Indian Affairs for the processing of applications under 25 U.S.C. §§ 325-328See 25 C.F.R. Part 161.
 
 
 [9]
 Choate v. Trapp, 224 U.S. 665, 671, 32 S.Ct. 565, 56 L.Ed. 941 (1912); Thomas v. Gay, 169 U.S. 264, 270-271, 18 S.Ct. 340, 42 L.Ed. 740 (1898); Cherokee Nation v. Southern Kansas Ry., 135 U.S. 641, 656-657, 10 S.Ct. 965, 34 L.Ed. 295 (1890)
 
 
 [10]
 FPC v. Tuscarora Indian Nation, 362 U.S. 99, 116-120, 80 S.Ct. 543, 4 L.Ed. 2d 584 (1960); Seneca Nation of Indians v. United States, 338 F.2d 55, 56-57 (2d Cir. 1964)
 
 
 [11]
 See note 6.
 
 
 [12]
 See section 109(d), Federal-Aid Highway Act of 1956, Pub.L. No. 627, 70 Stat. 374, 381.
 
 
 [13]
 United States v. Portneuf-Marsh Valley Irr. Co., 205 F. 416, 419 (E.D.Idaho 1913); Rio Verde Canal Co. (on review), 27 Interior Dec. 421 (1898)See also Leavenworth, Lawrence & Galveston R. R. v. United States, 92 U.S. 733, 747, 23 L.Ed. 634 (1875).
 
 
 [14]
 See section 17, Federal Highway Act of 1921, c. 119, 42 Stat. 212, 216.
 
 
 [15]
 See note 12.
 
 
 KILKENNY, Circuit Judge* (dissenting):
 
 20
 The majority, in my opinion, has overlooked the nature of the power which is vested in appellant. Eminent domain is not dependent upon any specific grant. It is an attribute of sovereignty, limited and conditioned only by the just compensation clause of the Fifth Amendment. Hanson Lumber Co. v. United States, 261 U.S. 581, 587, 43 S.Ct. 442, 67 L.Ed. 809 (1923); Cherokee Nation v. Kansas Ry. Co., 135 U.S. 641, 656-657, 10 S.Ct. 965, 34 L.Ed. 295 (1890). Beyond question, the appellant had inherent authority to exercise its power of eminent domain in a territory occupied by an Indian Nation or Tribe. That is the holding in Cherokee Nation v. Kansas Ry. Co., supra. It is the view of the majority that the Congress, by its enactment of the Federal-Aid Highways Act, 72 Stat. 885, 23 U.S.C. § 101 et seq., intended to destroy, or at least limit, the sovereign's inherent power of eminent domain so essential to its continued existence. I do not believe Congress intended any such result.
 
 
 21
 In promulgating this legislation, Congress declared that motor vehicle transportation was of major importance in the United States and that the construction of an adequate network of highways to serve the transportation needs of the country was of critical importance.[1] It was further declared that a program of such magnitude, involving the expenditure of great sums of money, should be administered with the utmost speed and efficiency.[2] That Congress intended that Federal-Aid highways should pass through Indian Reservations is demonstrated beyond question by the language of the original Act and its Amendments.[3]
 
 
 22
 It is my considered judgment that the phrase "owned by the United States", as employed in 23 U.S.C. §§ 107(d) and 317(a), was never intended to include land in which the United States had no beneficial interest, such as the Indian trust lands here under scrutiny. The word "owned", of course, has a variety of meanings. Its meaning in this legislation must be determined from the context in which it is used. The Congress itself distinguished between Indian lands, trust and individual, and other land. It went so far as to specifically define "roads * * * that are located within an Indian Reservation * * *." 23 U.S.C. § 101. It uses the phrase "unappropriated and unreserved public lands" in the same paragraph in which it uses the phrase "nontaxable Indian lands, individual and tribal". 23 U.S.C. § 120(c). If Congress had intended the phrase "owned by the United States", as used in §§ 107(d) and 317(a), to cover Indian trust lands, the enactment of 23 U.S.C. § 120(g) was not only unnecessary, but was wholly inconsistent with §§ 107(d) and 317(a). Section 120(g) reads:
 
 
 23
 "The Secretary is authorized to cooperate with the State highway departments and with the Department of the Interior in the construction of Federal-aid highways within Indian reservations and national parks and monuments under the jurisdiction of the Department of the Interior and to pay the amount assumed therefor from the funds apportioned in accordance with section 104 of this title to the State wherein the reservations and national parks and monuments are located."
 
 
 24
 Clearly, § 120(g) is special legislation concerned only with Indian land and certain other land under the jurisdiction of the Department of the Interior, as distinguished from other governmental agencies. The statute specifically designed for treatment of Indian lands should control. No matter how inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment. Fourco Glass Co. v. Transmirra Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957); MacEvoy Co. v. United States, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944); Monte Vista Lodge v. Guardian Life Ins. Co. of America, 384 F.2d 126 (9th Cir. 1967).
 
 
 25
 That there was good reason to insert the provision in § 120(g) authorizing the Secretary to cooperate with the highway departments and the Department of the Interior in the construction of Federal-Aid highways within Indian Reservations, is beyond argument. When one governmental agency is trading with another on an exchange of common place "land owned by the United States", it is like taking money from one pocket and putting it in another. In that atmosphere, there would be little reason to believe that a conflict would arise between the agencies which would result in a stalemate. Where, as here, the United States has no beneficial interest and the lands are actually administered by the Department of Indian Affairs and the Indian Tribal Government, the chances of a stalemate are not only suggested, but, in the absence of the power of eminent domain, quite predictable. In such case, the negotiations would not be on a basis of just compensation, but subject to the ever present threat of legal extortion. The Congress, in my opinion, never intended such a consequence.
 
 
 26
 True enough, the mention of "national parks and monuments" in the same sentence as "Indian reservations" in § 120(g), gives rise to a suspicion of ambiguity. The Congress, however, may have deliberately placed these specialized properties in the same general category with Indian reservations. Unquestionably, national parks and monuments should receive different treatment than run-of-the-mill land "owned by the United States". Be that as it may, the inclusion of "Indian reservations" land in § 120(g), by any reasonable rule of construction excludes this type of property from the provisions of § 107(d) and § 317(a).
 
 
 27
 The majority cites 25 U.S.C. §§ 311 and 357. I am convinced these sections are completely irrelevant and have no application to the problem before us. These statutes constitute part of the Act of March 3, 1901, c. 832, 31 Stat. 1058, enacted some 57 years prior to the emergency legislation in the Federal-Aid Highway Act of 1958. The 1901 legislation, on the acquisition of rights-of-way, is concerned solely with opening and establishing State highways through Indian reservations. In sharp contrast, the 1958 legislation, which we here construe, is concerned only with the acquisition of rights-of-way by the United States. There is nothing in the 1958 legislation which in any way indicates that it should be construed with the 1901 enactment. For that matter, the legislative history of the former demonstrates, beyond challenge, that the Congress intended to make it a clear, concise, up-to-date version of all existing Federal highway laws touching on the Federal-Aid highway program.[4]
 
 
 28
 Keeping in mind: (1) the declared purposes of the Federal-Aid Highway Act; (2) that the highway program was to move with such rapidity as to be completed within thirteen years from the date of the enactment in 1958; (3) the declared necessity of using the power of eminent domain; (4) the distinction in the Act itself between "lands owned by the United States", and "Indian lands, tribal or individual"; (5) the language of the Treaty between the United States and the Yakama Nation of Indians, June 9, 1855, 12 Stat. 951, making provision for roads through the reservation; and (6) the uniform line of authority recognizing in appellant the right of eminent domain in connection with the condemnation of Indian lands, Henkel v. United States, 237 U.S. 43, 49-50, 35 S.Ct. 536, 56 L.Ed. 831 (1915); Missouri, Kansas & Texas Ry. Co. v. Roberts, 152 U.S. 114, 117-118, 14 S.Ct. 496, 38 L.Ed. 377 (1894); F.P.C. v. Tuscarora Indian Nation, 362 U.S. 99, 116, 80 S.Ct. 543, 4 L. Ed.2d 584 (1960); Nicodemus v. Washington Water Power Co., 264 F.2d 614 (9th Cir.1959); Minnesota v. United States, 305 U.S. 382, 389, 59 S.Ct. 292, 83 L.Ed. 235 (1939); Chippewa Indians of Minnesota v. United States, 305 U.S. 479, 59 S.Ct. 313, 83 L.Ed. 300 (1939), I express the opinion that the 1958 legislation in no way limits the exercise by appellant of its inherent power of eminent domain.
 
 
 29
 The judgment of the lower court should be reversed.
 
 
 
 Notes:
 
 
 *
 Serving as United States District Judge at time of submission
 
 
 [1]
 2 U.S.Code Congressional and Administrative News, 85th Congress, (2d Session), 1958, p. 3944
 
 
 [2]
 Id.
 
 
 [3]
 23 U.S.C. §§ 101, 120(f), (g) and notes
 
 
 [4]
 2 U.S.Code Congressional and Administrative News, 85th Congress, (2d Session), 1958, pp. 3942-3943