Gilmer A. LANGE and Audrey M. Lange, his wife; Daniel A. McDonald and Mildred I. McDonald, his wife; Frank C. Austin and Joyce W. Austin, his wife; Marcia Wells Baker, a single woman; Frederick C. Erickson and Patricia D. Erickson, his wife; John G. Groen and Judith E. Groen, his wife; Clarence Golladay and Lourene Golladay, his wife; Robert B. Wilcox and Maxine Wilcox, his wife, Plaintiffs-Appellants,

v.

Claude S. BRINEGAR, Secretary of Transportation, in his official capacity; L. E. Lybecker, Regional Federal Highway Administrator for Region X of the Federal Highway Administration, Department of Transportation, in his official capacity; Patrick Clark, Federal Division Engineer for the Eastern Washington Division of Region X of the Federal Highway Administration, Department of Transportation, in his official capacity; Washington State Department of Highways; George Andrews, Director of the Washington State Department of Highways, in his official capacity; The Washington State Highway Commission, Defendants-Respondents,

Tri-City Nuclear Industrial Council and Yakima Valley-Construct I-82 Committee, Intervenor-Respondents.

No. 77–2223.

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 11, 1979.

Decided April 28, 1980.

Jonathan Blank, Preston, Thorgrimson, Ellis & Holman, Washington, D.C., argued, for plaintiffs-appellants.

Frances M. Green, Asst. U.S. Atty., Dept. of Justice, Washington, D.C., Charles F. Secrest, Olympia, Wash., argued, Slade Gorton, Atty. Gen., Olympia, Wash., on brief, for defendants-respondents.

Before KENNEDY, ALARCON, Circuit Judges, and GRANT, District Judge.

ALARCON, Circuit Judge.

Appellants have appealed from the judgment of the trial court denying injunctive and declaratory relief in connection with the construction of a segment of interstate highway I-82.

I

*PRELIMINARY FACTS*

Interstate Highway I-82 was authorized by Congress primarily to connect interstate

highway I-90 which runs from Seattle, Washington to Boston, Massachusetts, and interstate highway I-80N, which runs from Portland, Oregon to Salt Lake City, Utah. The portion of I-82 between Ellensburg, and Yakima, Washington is now complete and is not an issue on this appeal. Appellants challenge the validity of the approval of the forty-two mile segment of I-82 which runs from Yakima to Prosser.

The remaining portions of I-82 have been segmented into two parts: one portion running from the City of Yakima to the City of Prosser, and the other running from Prosser to the end of I-82 at Oregon near Stanfield. When interstate I-82 was originally authorized by the Department of Commerce in 1958, it was described as follows:

"From Ellensburg southerly along the Yakima River to Yakima, thence following the river in a southeasterly direction through the Yakima Indian Reservation to a point east of Toppenish, thence on a grade from the valley floor to a summit due south of Mabton on the Horse Heaven Hills, thence in a southeasterly direction to the Oregon state line at a crossing of the Columbia River at Umatilla on route to a junction with U.S. 30 at Stanfield Junction in Oregon."

## II

### CONTENTIONS ON APPEAL

Appellants contend that in their approval of the Prosser segment of I-82, the State of Washington and the Federal Government failed to comply with the terms of the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 et seq. and that the Federal Government failed to participate sufficiently in the drafting of the environmental impact statement as required by the Federal-Aid Highway Act of 1968, 23 U.S.C. § 138.

## III

### DISCUSSION

#### Segmentation of the Environmental Impact Statement

■ Appellants contend that under the terms of the National Environmental Policy

Act, it was the duty of the defendants-respondents to file a single environmental impact statement covering the entire course of I-82 from its beginning in Yakima to its connection with I-80N near Stanfield. We are told that the trial court erred in permitting the Yakima-Prosser portion of the highway to go forward without a complete analysis of alternatives and environmental impacts for the entire route.

Appellants argue that a far better location for the challenged portion of I-82 would be a northerly route, away from the irrigated farmlands. It is further contended that this route would have been chosen had all requisite planning required by the National Environmental Policy Act been completed.

In May, 1964, the state of Washington completed a reconnaissance report which placed I-82 in a specific location. Alternate routes were proposed for the entire portion of I-82 between Yakima and the Oregon State line. Prosser was not indicated as a control point.

The Washington State Department of Highways selected route C which ran from Yakima to Granger, to Prosser, then southwesterly crossing the Columbia at Plymouth-Umatilla. This route ran on the south side of Yakima River through the Yakima Indian Reservation. This route was approved for funding by the Federal Government on February 12, 1964.

Ultimately, route C had to be abandoned. The Yakima Tribal Council protested the proposed route insofar as it crossed over the Yakima Indian Reservation—requiring the condemnation of approximately 1,000 acres of land. Conversely, interested persons from the Tri-Cities opposed route C because it did not pass close enough.

In 1968, the State of Washington received authorization for the construction of a spur route, called I-182 which would link I-82 with SR-395. The route of I-182 was described as "from a juncture with FAI-82 in the vicinity of Prosser easterly to a junc-

ture with SR-395 at Pasco." As of December, 1968, the approved route for I-82 ran from Yakima through the Indian reservation to Prosser, southwesterly to the Oregon border at Umatilla, with a spur route to the Tri-Cities. In 1969, the Federal Highway Administration approved the Tri-Cities spur.

In April, 1970, this Court decided that the Secretary of Transportation had no statutory authority to condemn Indian Tribal lands for the construction of I-82 without (1) the approval of the Secretary of Interior, whose department holds title to such lands in trust for the benefit of confederated tribes and bands of the Yakima Indian Nation, or (2) the passage of four months without disapproval. (*U. S. v. 10.69 Acres of Land, More or Less, in Yakima County*, 425 F.2d 317 (9th Cir. 1970).)

The present route resulted from studies undertaken to construct I-82 so as to avoid passing through Yakima Indian Tribal lands.

In determining that segmentation of the Yakima-Prosser portion of I-82 was proper, for purposes of examining potential environmental impact, the trial court relied upon *Daly v. Volpe*, 514 F.2d 1106 (9th Cir. 1975). In *Daly*, this Court held that a comprehensive E.I.S. is not required for a segment of an interstate highway where the following criteria are met:

1. Under FHA Policy and Procedure Memorandum 90–1 (PPM) the highway section must be as long as practicable to permit consideration of environmental matters on a broad scope. A highway section is defined under PPM 90–1 as "a substantial length of highway between logical termini (major cross-roads, population centers, major traffic generators, or similar major highway control elements) as normally included in a single location study." PPM 90–1 § 3(a).

2. The section in question must have independent utility.

3. The length of highway selected must assure adequate opportunity for the consideration of alternatives.

4. The segment under consideration should fulfill important state and local needs.

In determining whether the evidence was sufficient to establish compliance with the requirements for a valid E.I.S. for a segment of an interstate highway as set forth in *Daly*, we are bound by the findings of the trial court unless they are clearly erroneous, (*Sessions, Inc. v. Morton*, 491 F.2d 854, 858 (9th Cir. 1974)). We have examined the record. The findings of the trial court that the right procedures under the National Environmental Policy Act were followed and that there was a reasonable consideration of alternatives are supported by the evidence.

Each of the criteria for determining when a segment is adequate for consideration in an independent E.I.S. was properly considered and applied by appellees.

*One.* The Yakima-Prosser segment runs between logical termini. The northern terminus is the end of the completed portion of I-82. Prosser, the southern terminus is a population center at which three state highways intersect. It is true as noted by appellant, that Prosser's population consist of 2,990 people and that other communities along the route of the highway have a large population. However, this Court held in *Daly v. Volpe, supra,* at 1109–1110 that ". . . population centers whether 'major' or 'minor,' also can serve as regulating parameters for segmentation choice."

*Two.* The Yakima-Prosser segment is long enough to ensure adequate consideration of alternative routes. In fact, alternative routes were considered. The Y route supported by appellants, runs north and east of the proposed route, through the Rattlesnake Hills, outside the irrigated farming lands and population centers of the Yakima Valley. A third alternative, the modified Y route, which would have passed east and south of Prosser, was also considered.

*Three.* The evidence shows that Yakima-Prosser segment has independent utility and would serve state and local needs, regardless of whether the remaining portion of I-82 is completed. The testimony estab-

lished that the segment would relieve congestion on presently congested state roads, especially during harvest season, and provide more efficient, safer means of transportation for local farmers and businessmen in the lower Yakima Valley. Twenty-five percent of the traffic on the segment would be local.

Appellants argue unpersuasively that the use of Prosser as the southern terminus of the approved route eliminated the consideration of acceptable alternatives which did not use the population center as a "fulcrum" or "control point." The choice of any segment between two termini quite logically always eliminates all other routes involving different termini. This court's decision in *United States v. 10.69 Acres of Land etc., supra*, 425 F.2d 317, made it necessary that the alternative routes pass north and east of the Yakima River to avoid passage over tribal lands. As noted above, the route selected passed through populated areas in which desert land had been made productive through irrigation. It seems quite obvious that such a route would serve the local needs of farmers and businessmen. The rejected alternatives would have provided long distance passage through unpopulated barren lands. Under these circumstances we cannot say that the decision to choose the challenged segment was arbitrary or capricious. We are satisfied that, in choosing the Yakima-Prosser segment, reasonable consideration was given to the environmental consequences which would result from the selection of that route over the others. A comprehensive E.I.S. was not required for the Yakima-Prosser segment under the criteria we adopted in *Daly v. Volpe, supra*.

Appellants argue that ". . . *Daly v. Volpe, supra*, has little continuing validity in light of subsequent precedents." Specifically, appellants contend that the proposition in *Daly* that segmentation of a project was proper for purposes of an E.I.S. if the segment had "independent utility" was "largely" rejected in *Cady v. Morton*, 527 F.2d 786 (9th Cir. 1975). *Cady* was decided by a panel of this Court on June 19, 1975. No mention was made in *Cady* of *Daly v.*

*Volpe* which had been earlier filed on March 20, 1975, by a different panel of this Court. In *Cady v. Morton, supra*, the Court held that under the National Environmental Policy Act, an application to mine 770 acres which were part of over 30,000 acres leased for coal mining purposes required a comprehensive E.I.S. covering the entire project contemplated by the leases in addition to a separate E.I.S. for each survey plan for tracts within the leased area. The Court in *Cady v. Morton* did *not* analyze and then reject existing case law concerning the validity of the segmentation of the certain construction projects for purposes of compliance with the National Environmental Policy Act. Instead, the Court limited its discussion to an application of the existing procedural standards which must be employed by a reviewing court. In so doing, the Court noted in passing in assessing the adequacy of an E.I.S.: "the standard presently is more ad hoc in character than might be thought proper. Nonetheless, we have no difficulty in applying it to this case." (*Cady v. Morton, supra*, at page 793.) Key to the Court's decision is the following language: ". . . the environmental consequences of several strip mining projects extending over twenty years or more within a tract of 30,876.45 acres will be significantly different from those which will accompany Westmoreland's activities on a single tract of 770 acres." (*Cady v. Morton, supra*, at 795.) In the matter before us we deal with a segment of a single highway project, not with the permanent and irreversible cumulative effect on the environment which will follow from the implementation of several coal mining projects on adjoining lands which are pending simultaneously.

No evidence was presented in this matter which demonstrates that the choice of one alternative over other proposed routes in completing a segment of an interstate highway has any environmental effect on the completed sections of the highway or on those portions whose location has yet to be chosen. Without contrary evidence in the record, it appears to us that the environ-

mental impact along the route chosen for a segment of an interstate highway remains relatively the same whether or not the entire highway is completed except that long distance or interstate traffic will undoubtedly be greater if any other segment is constructed. The travel projections used in the impact statements for the Yakima-Prosser segment were based on the assumption that I-82 would be completed. Thus, the cumulative effects of the construction of interstate I-82 were considered in the E.I.S. for the Yakima-Prosser segment.

The pendency of simultaneous projects on adjacent lands is an important factor in determining the need for a comprehensive E.I.S., as recognized in *Cady.* This rule is not inconsistent, however, with the holding here and in *Daly* that a highway segment meeting the requirements set forth in *Daly* can be covered by an E.I.S. that is directed solely to the segment, without comprehensive study of adjoining segments.

In support of their argument that a comprehensive impact statement is necessary before federal approval can be given to construction of a segment of an interstate highway, appellants also refer us to *Kleppe v. Sierra Club,* 427 U.S. 390, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976), wherein the court stated: "A comprehensive impact statement may be necessary in some cases for an agency to meet this duty. Thus, where several proposals for coal-related actions that will have a cumulative or synergistic environmental impact upon a region are pending currently before an agency, their environmental consequences must be considered together. Only through comprehensive consideration of pending proposals can the agency evaluate different courses of action." (427 U.S. 390 at 409–410, 96 S.Ct. 2718 at 2730, 49 L.Ed.2d 576).

Since as noted above, no evidence was presented of any synergistic or cumulative environmental impact which may result from the completion of the remaining segments of I-82 other than an increase in traffic, *Kleppe v. Sierra Club, supra,* has no application to the facts before this Court.

## Adequacy of the Environmental Impact Statement

Appellants argue that the environmental impact statements were inadequate because they failed to consider the following factors:

1. The secondary land development which may result from the construction of I-82.

2. The cutting of access to farming areas which would result from the construction of I-82 across the path of existing county roads and the increased traffic on the county roads not affected by the project.

3. The available alternative routes which do not run through Prosser.

The standard for judicial review of the adequacy of an environmental impact was set forth by this Court in *Lathan v. Brinegar,* 506 F.2d 677 (9th Cir. 1974) at page 693: "The procedures required by NEPA, 42 U.S.C. § 4332(2)(c), are designed to secure the accomplishment of the vital purpose of NEPA. That result can be achieved only if the prescribed procedures are faithfully followed; grudging pro forma compliance will not do . . . This does not mean that the court's are to 'fly speck' environmental impact statements. The preparation of such a statement necessarily calls for judgment, and the judgment is the agency's. But the courts can, and should, require full, fair, bona fide compliance with NEPA."

We believe that the environmental impact statements in the matter before us adequately complied with the procedural requirements of NEPA.

Appellants' complaint that secondary business development is not adequately considered, is without merit. Exhibit 19 reflects that the 1972 E.I.S. refers to the impact of possible secondary business development which will follow construction of the Yakima-Prosser segment especially near major interchanges. For example, reference is made to the incidental construction of service stations, food, and lodging facilities. In Exhibit 36 we see reference in the

1975 supplemental impact statement to an economic study of the redistribution of retail sales and the selection of local businesses. The fact that no reference is made to the possible impact incidental development may have on water supplies and sewage treatment plants is not controlling. The precise impact of potential future business development on water supply and sewage facilities cannot be determined until decisions are made as to whether, when, and where such construction should occur. Until then, an attempt to measure the possible economic impact would be an exercise in speculation. As we said in *Trout Unlimited v. Morton*, 509 F.2d 1276, 1283 (9th Cir. 1974) "An E.I.S. need not discuss remote and highly speculative consequences." An environmental impact statement must focus not on analysis of the primary or secondary effect of a project, but upon those results which have a significant impact on the environment. (*See id.*, at 1283, fn. 9.) Tested by the "rule of reason," the discussion in the E.I.S. of the consequences of secondary development was adequate. (*See id.* at 1283.)

Contrary to appellants' argument, the E.I.S. adequately discussed the consequences of the construction of I-82 on local access and farm-to-market traffic. The statement deals with importance to the residents and farmers of the Yakima Valley in maintaining the county road system and SR 12. This concern is illustrated by the following language from Exhibit 19 at page 9:

"Crossing the Valley at irregularly spaced locations are several important roads that connect population centers and the two State highways. These major cross-valley movements are and will continue to be Waputo-Donald; Toppenish-Buena, Toppenish-Zillah, Alfalfa-Granger, Sunnyside-Mabton, and Grandview-Mabton."

The advance study advises that SR 12 will remain intact and little change will occur as to the routes necessary for fire prevention and rural school buses. The plan provides for the building of feeder roads and the improvement of existing roads. The statement indicates that as planned, the high-

way was designed to minimize the effect on local access and farm-to-market access. Thus the secondary consequences of I-82 on local access were examined in the impact statement. NEPA does not require more.

Appellants' principal criticism concerning the adequacy of the discussion in the E.I.S. of alternatives to the proposed segment is that no route was considered which did not pass through Prosser. This argument is not supported by the record. In fact, the impact statement considers at great length an alternative known as the "modified Y" route which does not pass though Prosser.

■ The discussion of alternatives in an E.I.S. statement is subject to a construction of reasonableness. ". . . the E.I.S. need only set forth those alternatives sufficient to present a reasoned choice." (*Life of the Land v. Brinegar*, 485 F.2d 460, 472 (9th Cir. 1973) *cert. denied* 416 U.S. 961, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974), quoting *N.R.D.C., Inc. v. Morton*, 148 U.S.App.D.C. 5, 458 F.2d 827, 833 (1972). ". . . once an agency has made a decision subject to NEPA's procedural requirements, the only role for the courts is to insure that the agency has considered the environmental consequences; it cannot 'inject itself within the area of discretion of the executive as to the choice of the action to be taken'." (*Strycker's Bay Neighborhood Council, Inc. v. Karlen*, 444 U.S. 223, 100 S.Ct. 497, 62 L.Ed.2d 433 (1980), quoting *Kleppe v. Sierra Club, supra*, 427 U.S. at 410, 96 S.Ct. at 2730.)

The evaluation of the alternative to the proposed route was sufficient to meet the requirements of NEPA.

*Participation of Federal Officials in the Preparation of the E.I.S.*

■ An environmental impact statement may be prepared by a state if ". . . the responsible Federal official furnishes guidance and participates in such preparation . . . " and ". . . independently evaluates such statement prior to its approval and adoption." (42 U.S.C. § 4332(D)). The record contains substantial

evidence of the participation of the responsible federal officials in the preparation and evaluation of the E.I.S. The testimony of Charles F. Walton, the Area Administrator for the Federal Highway Administration, reveals that he participated in the preparation of drafts of the 1971 and 1975 impact statements during weekly phone calls and biweekly meetings. In addition, Mr. Walton made four or five field trips over the route beginning in 1967. The impact statements were also reviewed by the Regional Environmental Committee as well as in the Washington, D.C. offices of FHWA.

We are satisfied that the Federal Highway Administration adequately considered the environmental consequences of its decision to approve the proposed segment of I-82. The judgment is AFFIRMED.

Intervening defendants' motion to dismiss the appeal as moot is DENIED.